IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATE DOYLE,<br><br>NATIONAL SECURITY ARCHIVE,<br><br>CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY,<br><br>      Plaintiffs,<br><br>    v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>      Defendant. | Civil Action No. _____ |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, for injunctive, declaratory, and other appropriate relief. Plaintiffs challenge the failure of the U.S. Department of Homeland Security ("DHS") to disclose to them records of visits to the White House and to President Donald Trump at his Mar-a-Lago and Trump Tower residences that the Secret Service, a component of DHS, maintains.

2.  This case seeks declaratory relief that DHS is in violation of the FOIA, 5 U.S.C. § 552(a)(3)(a), by refusing to search for and provide plaintiffs with all responsive documents on an expedited basis, and injunctive relief ordering DHS to process and release to plaintiffs immediately the requested records.

**Jurisdiction and Venue**

3.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a), and 2202. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4.     Plaintiff Kate Doyle is a senior analyst of U.S. policy in Latin America. Based in the New York office of the National Security Archive, Ms. Doyle works with other scholars, journalists, human rights groups, truth commissions, prosecutors, and judges to open and analyze government files, including through use of the FOIA. Ms. Doyle has authored several dozen book chapters and articles that have appeared in scholarly publications such as the *World Policy Journal*, and in media ranging from *Harper's Magazine* to Mexico's *Proceso*.

5.     Plaintiff National Security Archive is an independent, non-governmental, non-profit research institute organized under section 501(c)(3) of the Internal Revenue Code. The Archive collects, analyzes, and publishes U.S. government documents acquired through the FOIA in order to enrich scholarship and journalism with primary sources, and to promote openness and government accountability. The Archive won the 1999 George Polk Award, one of U.S. journalism's most prestigious prizes, for — in the words of the citation — "piercing self-serving veils of government secrecy, guiding journalists in search for the truth, and informing us all." The Archive is a representative of the news media as defined in 5 U.S.C. § 552(a)(4)(a)(ii). Prior Archive litigation under the FOIA and the Federal Records Act compelled the preservation and e-archiving of White House e-mail from every Presidential administration from Reagan to Obama.

6. Plaintiff CREW is a non-profit, non-partisan organization organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the rights of citizens to be informed about the activities of government officials and agencies, and to ensuring the integrity of government officials and agencies. CREW seeks to empower citizens to have an influential voice in government decisions and in the government decision-making process through the dissemination of information about public officials and their actions. To advance its mission, CREW uses a combination of research, litigation, and advocacy. As part of its research, CREW uses government records made available to it under the FOIA. CREW has sought records of White House visits from the Secret Service in the past, and its prior litigation led to the decision of the Obama administration to establish a system for publishing White House visitor logs on an ongoing basis.

7. Plaintiff Knight First Amendment Institute at Columbia University is a newly established New York not-for-profit corporation that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education. Research and public education are essential to the Institute's mission. Obtaining information about government activity through the FOIA, analyzing that information, and publishing and disseminating its analysis to the press and public are among the core activities the Institute was established to perform.

8. Defendant DHS is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 701. DHS and its component Secret Service have possession and control of the requested records and are responsible for fulfilling plaintiffs' FOIA requests.

**Factual Background**

9. In September 2009, then–President Obama announced that starting in a few months, he would open up to the public White House visitor logs on a regular basis by posting online every month the names of visitors over the previous 90 to 120 days.

10. Under the new policy, the posted records would include names of visitors, the dates and times they entered and left the White House compound, and the names of the persons they visited. The logs were subject to several exceptions, including purely personal guests of the Obama family, the need to protect national security interests, and the temporary need to protect particularly sensitive meetings, such as the vetting of a Supreme Court candidate.

11. In explaining the policy, President Obama said in a written statement, "Americans have a right to know whose voices are being heard in the policymaking process." When he left office, President Obama's administration had released under his policy 5.99 million records of White House visitors.

12. President Obama's decision to provide public access to White House visitor logs was the result of four separate lawsuits brought by CREW under the FOIA.

13. Currently, the White House website page at which the visitor logs were made available during the Obama administration states it is being updated and that records of White House visitors will be posted "on an ongoing basis, once they become available."

14. The White House has refused to say whether it will continue to provide public access to White House visitor logs. In response to this silence, on March 6, 2017, eight Senators wrote to President Trump and U.S. Secret Service Deputy Director William J. Callahan seeking the ongoing release of White House visitor logs.

15. In their letter to the president, the senators noted that during President Obama's tenure, "[t]hese logs provided the American public an unprecedented look at who was lobbying his Administration without compromising the President's ability to execute the functions of his office on a day-to-day basis." The letter also mentioned concerns about transparency at President Trump's so-called "Winter White House," Mar-a-Lago, and urged the president to extend President Obama's policies on visitor logs "to address your decision to regularly conduct official business at private properties that also provide access to certain members of the public."

16. The senators' letter to Mr. Callahan echoed these concerns. Specifically, they noted,

> It would be a significant setback to efforts to give the public insight into who influences the White House if this policy were to be discontinued or limited. Indeed, given the unique aspects of how President Trump has decided to conduct official business, we believe he needs to do even more just to meet the benchmark of transparency set by President Obama. President Trump has already taken four trips to his so-called 'Winter White House' at his Mar-a-Lago estate in Florida, during which he conducted official business in full view of Mar-a-Lago members and their guests. During his transition, then President-elect Trump worked at the Trump Tower and the Trump National Golf Club in Bedminster, New Jersey, two locations that are also open to certain members of the public. Recently released audio of one post-election visit to Bedminster captured then President-elect Trump inviting members to 'come around' as he interviews people to serve in his administration.

17. Both letters sought responses to specific questions. Among the information sought from the Secret Service was whether the records systems used to track visitors at the White House complex — the Workers and Visitors Entry System ("WAVES") and the Access Control Records system ("ACR") — also were being used at Mar-a-Lago, and whether their use was being considered for Trump Tower, Bedminster, and other Trump properties where the

president may conduct official business. This same question also was posed to President Trump.

18. On information and belief, neither President Trump nor Deputy Director Callahan has yet responded to these letters.

*FOIA Requests At Issue*

19. On January 23, 2017, Plaintiff Kate Doyle sent a FOIA request by facsimile to the Secret Service requesting WAVES and ACR records for three days: January 20, January 21, and January 22, 2017. From these records Ms. Doyle requested 28 fields of data that were displayed in a screenshot of the White House Visitor Records Requests website of President Obama, which she included with her request.

20. On February 24, 2017, Ms. Doyle sent by facsimile an administrative appeal based on the refusal of the Secret Service to respond in any way to her request.

21. To date, the Secret Service has not responded to either Ms. Doyle's request of January 23 or her appeal of February 24, 2017.

22. The Secret Service has not provided Ms. Doyle with a determination on her request, including an identification of what documents the agency plans to release, what documents the agency plans to withhold, and why. The FOIA requires agencies to make this determination within 20 business days of receiving a non-expedited FOIA request.

23. Because the Secret Service has failed to make a determination under the FOIA on Ms. Doyle's request, she has now exhausted all applicable administrative remedies.

24. On March 10, 2017, Plaintiffs Doyle, the National Security Archive, CREW and the Knight First Amendment Institute sent by facsimile a second FOIA request to the Secret Service. This request seeks two categories of records: (1) WAVES and ACR records from

January 20, 2017 until March 8, 2017, and (2) records of presidential visitors at Mar-a-Lago and Trump Tower from January 20, 2017 to March 8, 2017. From these records the request identifies the same 28 fields of data contained in the White House Visitor Records posted by the Obama administration.

25. Plaintiffs also requested that the Secret Service expedite this second request in light of the significant concerns raised about how President Trump is using his private properties at Mar-a-Lago and Trump Tower, and the extensive media coverage of this issue and the refusal of the president to date to commit to releasing the visitor logs data.

26. To date the Secret Service has not responded in any way to the March 10, 2017 expedited FOIA request.

27. This failure to respond includes a failure to make a determination under the FOIA within 10 calendar days on plaintiffs' request for expedition, as the FOIA and DHS regulations require.

28. Further, the Secret Service has failed to process the March 10, 2017 request as soon as practicable and provide plaintiffs with a determination on their request, including an identification of what documents the agency plans to release, what documents the agency plans to withhold, and why, as the FOIA requires for expedited requests.

29. The Secret Service also has failed to make a determination under the FOIA on plaintiffs' request within 20 business days, as the FOIA requires for non-expedited requests.

30. Because the Secret Service has failed to make a determination under the FOIA on plaintiffs' FOIA request under either the standards set out for expedited requests or those set out for all other requests, plaintiffs have now exhausted all applicable administrative remedies.

## PLAINTIFFS' CLAIMS FOR RELIEF

### CLAIM ONE
**(Wrongful Withholding of Non-Exempt Records Requested by Plaintiff Doyle)**

31. Plaintiffs repeat and re-allege paragraphs 1–30.

32. Plaintiff Doyle properly asked for records within the custody and control of the Secret Service, a component of DHS.

33. Defendant DHS wrongfully withheld agency records requested by Plaintiff Doyle by failing to comply with the statutory time limit for making a determination on non-expedited FOIA requests, and by withholding from disclosure records responsive to her FOIA request.

34. By failing to release the records as Plaintiff Doyle specifically requested, defendant violated the FOIA.

35. Plaintiff Doyle therefore is entitled to injunctive and declaratory relief with respect to the prompt processing and disclosure of the requested records.

### CLAIM TWO
**(Wrongful Withholding of Non-Exempt Records Requested by Plaintiffs)**

36. Plaintiffs repeat and re-allege paragraphs 1–35.

37. Plaintiffs properly asked for records within the custody and control of the Secret Service, a component of DHS, on an expedited basis.

38. Defendant DHS wrongfully withheld agency records requested by plaintiffs by failing to act "as soon as practicable" to make a determination on the plaintiffs' expedited FOIA request, and by withholding from disclosure records responsive to their FOIA request.

39. By failing to release the records as plaintiffs specifically requested, defendant violated the FOIA.

40. Plaintiffs therefore are entitled to injunctive and declaratory relief with respect to the expedited processing and disclosure of the requested records.

**Requested Relief**

WHEREFORE, plaintiffs respectfully request that this Court:

(1) Order Defendant DHS to fully and promptly process Plaintiff Doyle's January 23, 2017 FOIA request and disclose all non-exempt documents immediately to Plaintiff;

(2) Issue a declaration that Plaintiff Doyle is entitled to prompt processing and disclosure of the requested records;

(3) Order Defendant DHS to fully and immediately process Plaintiffs' March 10, 2017 FOIA request and disclose all non-exempt documents immediately to Plaintiffs;

(4) Issue a declaration that Plaintiffs are entitled to expedited processing and disclosure of the requested records;

(5) Provide for expeditious proceedings in this action;

(6) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld and order Defendant DHS to disclose any wrongfully withheld records;

(7) Award plaintiffs their costs and reasonable attorneys' fees in this action; and

(8) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Anne L. Weismann (D.C. Bar No. 298190)
(pro hac vice motion forthcoming)
Citizens for Responsibility and Ethics
   in Washington
455 Massachusetts Ave., N.W., Sixth Floor
Washington, DC 20001
Phone: (202) 408-5565
Facsimile: (202) 588-5020

/s/ Alex Abdo
Alex Abdo (AA-0527)
Jameel Jaffer (JJ-4653)
Knight First Amendment Institute
   at Columbia University
314 Low Library

> 535 West 116th Street
> New York, NY 10027
> Phone: (212) 854-9600
> alex.abdo@knightcolumbia.org
>
> *Attorneys for Plaintiffs*

Dated: April 10, 2017