**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KATE DOYLE,** ) | |
| ) | |
| **NATIONAL SECURITY ARCHIVE,** ) | |
| ) | |
| **CITIZENS FOR RESPONSIBILITY** ) | |
| **AND ETHICS IN WASHINGTON,** ) | |
| ) | |
| **THE KNIGHT FIRST AMENDMENT** ) | |
| **INSTITUTE AT COLUMBIA** ) | |
| **UNIVERSITY,** ) | |
| ) | Civil Action No. 17-2542 (KPF) |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| **U.S. DEPARTMENT OF HOMELAND** ) | |
| **SECURITY,** ) | |
| ) | |
| **EXECUTIVE OFFICE OF THE** ) | |
| **PRESIDENT,** ) | |
| ) | |
| Defendants. ) | |

<u>**AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**</u>

1.  This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the Administrative

Procedure Act ("APA"), 5 U.S.C. § 706, the Federal Records Act ("FRA"), 44 U.S.C. §§

2101, *et seq.*, 3010 *et seq.*, and 3301, *et seq.*, and the Presidential Record Act ("PRA"),

44 U.S.C. §§ 2201, *et seq.*, for injunctive, declaratory, and other appropriate relief.

Plaintiffs challenge the failure of the U.S. Department of Homeland Security ("DHS") to

disclose to them records of visits to the White House and to President Donald Trump at

his Mar-a-Lago and Trump Tower residences that the Secret Service, a component of

DHS, maintains.  Plaintiffs also challenge as arbitrary, capricious, and contrary to law the treatment by the Executive Office of the President ("EOP") and DHS of records of visits to agency components of the EOP as presidential records under the PRA that are not publicly accessible through the FOIA, and the failure of DHS to manage and preserve these records under the FRA.

2.  This case seeks declaratory relief that DHS is in violation of the FOIA, 5 U.S.C. § 552(a)(3)(a), by refusing to search for and provide plaintiffs with all responsive documents on an expedited basis, injunctive relief ordering the defendant DHS to process and release to plaintiffs immediately the requested records, declaratory relief that the policies and practices of the EOP and DHS to treat records of visits to agency components of the EOP as presidential records violate both the FRA and the PRA, and injunctive relief ordering DHS to manage and maintain these records as agency records pursuant to the FRA.

**Jurisdiction and Venue**

3.  This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B), 5 U.S.C. § 702, and 28 U.S.C. §§ 133, 2201(a), and 2202.  Venue lies in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

**Parties**

4.  Plaintiff Kate Doyle is a senior analyst of U.S. policy in Latin America.  Based in the New York office of the National Security Archive, Ms. Doyle works with other scholars, journalists, human rights groups, truth commissions, prosecutors, and judges to open and analyze government files, including through use of the FOIA.  Ms. Doyle has

authored several dozen book chapters and articles that have appeared in scholarly

publications such as the *World Policy Journal*, and in media ranging from *Harper's*

*Magazine* to Mexico's *Proceso*.

     5.   Plaintiff National Security Archive is an independent, non-governmental, non-

profit research institute organized under section 501(c)(3) of the Internal Revenue Code.

The Archive collects, analyzes, and publishes U.S. government documents acquired

through the FOIA in order to enrich scholarship and journalism with primary sources, and

to promote openness and government accountability.  The Archive won the 1999 George

Polk Award, one of U.S. journalism's most prestigious prizes, for – in the words of the

citation – "piercing self-serving veils of government secrecy, guiding journalists in search

for the truth, and informing us all."  The Archive is a representative of the news media as

defined in 5 U.S.C. § 552(a)(4)(a)(ii).  Prior Archive litigation under the FOIA and the

Federal Records Act compelled the preservation and e-archiving of White House e-mail

from every Presidential administration from Reagan to Obama.

     6.   Plaintiff CREW is a non-profit, non-partisan organization organized under

section 501(c)(3) of the Internal Revenue Code.  CREW is committed to protecting the

rights of citizens to be informed about the activities of government officials and agencies,

and to ensuring the integrity of government officials and agencies.  CREW seeks to

empower citizens to have an influential voice in government decisions and in the

government decision-making process through the dissemination of information about

public officials and their actions.  To advance its mission, CREW uses a combination of

research, litigation, and advocacy.  As part of its research, CREW uses government

records made available to it under the FOIA.  CREW has sought records of White House

visits from the Secret Service in the past, and its prior litigation led to the decision of the Obama administration to establish a system for publishing White House visitor logs on an ongoing basis.

7.  Plaintiff Knight First Amendment Institute at Columbia University is a newly established New York not-for-profit corporation that works to preserve and expand the freedoms of speech and the press through strategic litigation, research, and public education.  Research and public education are essential to the Institute's mission. Obtaining information about government activity through the FOIA, analyzing that information, and publishing and disseminating its analysis to the press and public are among the core activities the Institute was established to perform.

8.  Defendant DHS is an agency within the meaning of 5 U.S.C. § 552(f) and 5 U.S.C. § 701.  DHS and its component Secret Service have possession and control of the requested records and are responsible for fulfilling plaintiffs' FOIA requests.

9.  Defendant EOP includes the agency known as the EOP and its individual components.  The agency components of the EOP subject to the FOIA and the FRA include the Council on Environmental Quality ("CEQ"), the Office of Management and Budget ("OMB"), the Office of National Drug Control Policy "(ONDCP"), the Office of Science and Technology Policy ("OSTP"), and the Office of the United States Trade Representative ("USTR").

## STATUTORY BACKGROUND

*The FOIA*

10.  The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

11.  An agency must respond to a party making a FOIA request within 20 working days, notifying that party which records it will produce, which records it is withholding and why, and the requester's right to appeal the agency's determination administratively, and thereafter must make the documents "promptly available."  5 U.S.C. § 552(a)(6)(A)(i),

12.  In "unusual" circumstances" an agency may delay its response to a FOIA request or appeal, but must provide notice and "the date on which a determination is expected to be dispatched."  5 U.S.C. § 552(a)(6)(B).

13.  If the agency fails to comply with these time limits, a requester is deemed to have exhausted administrative remedies.  5 U.S.C. § 552(a)(6)(C)(i).

*The FRA*

14.  The FRA is a collection of statutes that govern the creation, management, and disposal of federal or "agency" records.  44 U.S.C. U.S.C. §§ 2101-18, 2901-09, 3101-07, and 3301-24.  The FRA requires that federal agencies establish:  (1) a program to make and preserve agency records; (2) effective controls over the creation, maintenance, and use of records; and (3) safeguards against the removal or loss of records.  44 U.S.C. §§ 3101, 3102, and 3105.

15.  Federal or "agency" records are defined to include "all books, papers . . . or other documentary materials, regardless of physical form or characteristics . . . made or received by an agency of the United States Government under Federal law in connection

5

with the transaction of public business and preserved or appropriate for preservation by that agency . . . as evidence of the organization, functions, policies, decisions, procedures, operations or other activities of the Government or because of the information value of data in them."  44 U.S.C. § 3301.

16.  Specific provisions of the FRA, 44 U.S.C. §§ 3301, *et seq.*, govern the disposal of federal records and provide the exclusive procedure by which all federal records may be disposed or destroyed, and then only with the authorization of the Archivist of the United States.  44 U.S.C. § 3314.

17.  The FRA imposes on heads of agencies an affirmative duty to implement standards and guidelines for the retention of federal records.  Each agency head must maintain an active records management program that provides for effective controls over the creation and use of federal records and that ensures the application of the Archivist's standards and procedures for the preservation of federal records.  44 U.S.C. § 3102.

18.  A member of the public may request the disclosure of agency records subject to the FRA through the FOIA, 5 U.S.C. § 552(f).

19.  An individual record that meets the definition of an agency record and is therefore within the scope of the FOIA cannot also qualify as a presidential record.  This is because "the definition of 'agency' records in the FOIA trumps the definition of 'presidential records' in the PRA."  *Armstrong v. EOP*, 1 F.3d 1274, 1293 (D.C. Cir. 1993).

*The PRA*

20.  The PRA, enacted in 1978 to establish public ownership of presidential and vice presidential records, imposes recordkeeping requirements on the President and Vice

6

President.  Specifically, the PRA directs the President to "take all such steps as may be necessary to assure that the activities, deliberations, decisions, and policies that reflect the performance of his constitutional, statutory, or other official or ceremonial duties are adequately documented and that such records are maintained as Presidential records[.]" 44 U.S.C. § 2203.

21.  The PRA mandates that records created or received in the White House "the function of which is to advise or assist the President, shall, to the extent practicable, be categorized as Presidential records or personal records upon their creation or receipt and be filed separately."  44 U.S.C. § 2203(b).

22.  Because the FOIA's definition of agency record trumps the PRA's definition of presidential record, once a record is determined to be an agency record under the FOIA it cannot be treated as a presidential record.  This is "absolutely essential to preventing the PRA from becoming a potential presidential *carte blanche* to shield materials from the reach of the FOIA."  *Armstrong v. EOP*, 1 F.3d at 1292.

## Factual Background

23.  In September 2009, then-President Obama announced that starting in a few months, he would open up to the public White House visitor logs on a regular basis by posting online every month the names of visitors over the previous 90 to 120 days.

24.  Under the new policy, the posted records would include names of visitors, the dates and times they entered and left the White House compound, and the names of the persons they visited.  The logs were subject to several exceptions, including purely personal guests of the Obama family, the need to protect national security interests, and

the temporary need to protect particularly sensitive meetings, such as the vetting of a
Supreme Court candidate.

25. In explaining the policy, President Obama said in a written statement,
"Americans have a right to know whose voices are being heard in the policymaking
process." When he left office, President Obama's administration had released under this
policy 5.99 million records of White House visitors.

26. President Obama's decision to provide public access to White House visitor
logs was the result of four separate lawsuits brought by CREW under the FOIA.

27. When President Trump took office, the White House refused to say whether
it would continue to provide public access to White House visitor logs. In response to
this silence, on March 6, 2017, eight Senators wrote to President Trump and U.S. Secret
Service Deputy Director William J. Callahan seeking the ongoing release of White
House visitor logs.

28. In their letter to the President, the senators noted that during President
Obama's tenure, "[t]hese logs provided the American public an unprecedented look at
who was lobbying his Administration without compromising the President's ability to
execute the functions of his office on a day-to-day basis." The letter also mentioned
concerns about transparency at President Trump's so-called "Winter White House,"
Mar-a-Lago, and urged President Trump to extend President Obama's policies on
visitor logs "to address your decision to regularly conduct official business at private
properties that also provide access to certain members of the public."

29. The senators' letter to Mr. Callahan echoed these concerns. Specifically,
they noted,

> It would be a significant setback to efforts to give the public
> insight into who influences the White House if this policy
> were to be discontinued or limited.  Indeed, given the unique
> aspects of how President Trump has decided to conduct official
> business, we believe he needs to do even more just to meet the
> benchmark of transparency set by President Obama.  President
> Trump has already taken four trips to his so-called 'Winter White
> House' at his Mar-a-Lago estate in Florida, during which he
> conducted official business in full view of Mar-a-Lago members
> and their guests.  During his transition, then President-elect Trump
> worked at the Trump Tower and the Trump National Golf Club
> in Bedminster, New Jersey, two locations that are also open to
> certain members of the public.  Recently released audio of one
> post-election visit to Bedminster captured then President-elect
> Trump inviting members to 'come around' as he interviews
> people to serve in his administration.

30. Both letters sought responses to specific questions.  Among the information sought from the Secret Service was whether the records systems used to track visitors at the White House complex – the Workers and Visitors Entry System ("WAVES") and the Access Control Records system ("ACR") – also were being used at Mar-a-Lago, and whether their use was being considered for Trump Tower, Bedminster, and other Trump properties where the President may conduct official business.  This same question also was posed to President Trump.

31. On information and belief, neither President Trump nor Deputy Director Callahan responded to these letters.

32. Instead, on April 14, 2017, President Trump through a spokesperson announced the White House would no longer provide public access to White House visitor logs.

33. Plaintiffs filed their first complaint in this case on April 10, 2017, against DHS.  Plaintiffs' complaint challenges the failure of DHS to comply with its obligations under the FOIA with respect to two requests.

34.  First, on January 23, 2017, Plaintiff Kate Doyle sent a FOIA request by facsimile to the Secret Service requesting all WAVES and ACR records for three days: January 20, January 21, and January 22, 2017.  From these records, Ms. Doyle requested 28 fields of data that were displayed in a screenshot of the White House Visitor Records Requests website of President Obama, which she included with her request.

35.  On February 24, 2017, Ms. Doyle sent by facsimile an administrative appeal based on the refusal of the Secret Service to respond in any way to her request.

36.  At the time plaintiffs filed their complaint, the Secret Service had not responded to either Ms. Doyle's request of January 23 or her appeal of February 24, 2017.

37.  At the time plaintiffs filed their complaint, the Secret Service had not provided Ms. Doyle with a determination on her request, including an identification of what documents the agency plans to release, what documents the agency plans to withhold, and why.  The FOIA requires agencies to make this determination within 20 business days of receiving a non-expedited FOIA request.

38.  Because the Secret Service failed to make a determination under the FOIA on Ms. Doyle's request, she had exhausted all applicable administrative remedies at the time plaintiffs filed their complaint.

39.  Second, on March 10, 2017, Plaintiffs Doyle, the National Security Archive, CREW, and the Knight First Amendment Institute sent by facsimile a second FOIA request to the Secret Service.  This request seeks two categories of records:  (1) all WAVES and ACR records from January 20, 2017 until March 8, 2017, and (2)

records of presidential visitors at Mar-a-Lago and Trump Tower from January 20, 2017 to March 8, 2017.  From these records the request identifies the same 28 fields of data contained in the White House Visitor Records posted by the Obama administration.

40.  Plaintiffs also requested that the Secret Service expedite this second request in light of the significant concerns raised about how President Trump is using his private properties at Mar-a-Lago and Trump Tower, the extensive media coverage of this issue, and the refusal of the President to date to commit to releasing the visitor logs data.

41.  At the time plaintiffs filed their complaint, the Secret Service had not responded in any way to the March 10, 2017 expedited FOIA request.

42.  This failure to respond includes a failure to make a determination under the FOIA within 10 calendar days on plaintiffs' request for expedition, as the FOIA and DHS regulations require,

43.  Further, the Secret Service failed to process the March 10, 2017 request as soon as practicable and provide plaintiffs with a determination on their request, including an identification of what documents the agency plans to release, what documents the agency plans to withhold, and why, as the FOIA requires for expedited requests.

44.  The Secret Service also failed to make a determination under the FOIA on plaintiffs' request within 20 business days, as the FOIA requires for non-expedited requests.

45.  Because the Secret Service failed to make a determination under the FOIA on plaintiffs' second FOIA request under either the standards set out for expedited requests

or those set out for all other requests, plaintiffs had exhausted all applicable administrative remedies when they filed their complaint.

46.  DHS filed its answer to the complaint on May 22, 2017 (Dkt. 21).

47.  On July 14, 2017, following the Initial Pretrial Conference, the Court entered an order adopting the parties' proposed schedule for document production and motions (Dkt. 23).  Under that schedule, the Secret Service is to produce all non-exempt responsive records of presidential visitors at Mar-a-Lago by September 8, 2017, and the parties' briefing on the remaining issues is to be completed by January 12, 2018.

48.  On August 17, 2017, Public Citizen, Inc. filed a complaint against the United States Secret Service, Civil Action No. 17-1669 (D.D.C.), challenging the failure of the Secret Service under the FOIA to produce records of visits to four EOP agencies subject to the FOIA:  OMB, OSTP, ONDCP, and CEQ.  Public Citizen identified its case as related to this lawsuit because they share common issues of fact.

49.  With its complaint, Public Citizen also filed a motion for a temporary restraining order and preliminary injunction to require the Secret Service to maintain copies of the records at issue in that case pending resolution of the litigation.  Public Citizen's motion is based on the administrative response of the Secret Service to its FOIA requests that the requested records are presidential and governed by the PRA, not agency records subject to the FOIA, and that in any event the Secret Service has not maintained the requested records, but instead has transferred them – and continues to transfer them – to the White House Office of Records Management, a non-agency component of the EOP.

50.  In its opposition to the motion for a temporary restraining order the Secret Service relied in part on a 2015 Memorandum of Understanding ("MOU") that, on information and belief, has never before been made public.  That MOU states in relevant part:  "[a]ll records created, stored, used, or transmitted by, on, or through the unclassified information systems and information resources provided to the President, Vice President, and EOP shall remain under the exclusive ownership, control, and custody of the President, Vice President, or originating EOP component."  The Secret Service has interpreted this provision as applying to all the records at issue in the *Public Citizen* lawsuit.

## PLAINTIFFS' CLAIMS FOR RELIEF

### CLAIM ONE
### (DHS's Wrongful Withholding of Non-Exempt Records Requested by Plaintiff Doyle)

51.  Plaintiffs repeat and re-allege paragraphs 1-50.

52.  Plaintiff Doyle properly asked for records within the custody and control of the Secret Service, a component of DHS.

53.  Defendant DHS wrongfully withheld agency records requested by Plaintiff Doyle by failing to comply with the statutory time limit for making a determination on non-expedited FOIA requests, and by withholding from disclosure records responsive to her FOIA request.

54.  By failing to release the records as Plaintiff Doyle specifically requested, defendant DHS violated the FOIA.

55.  Plaintiff Doyle therefore is entitled to injunctive and declaratory relief with respect to the prompt processing and disclosure of the requested records.

**CLAIM TWO**
**(DHS's Wrongful Withholding of Non-Exempt Records Requested by Plaintiffs)**

56.  Plaintiffs repeat and re-allege paragraphs 1-55.

57.  Plaintiffs properly asked for records within the custody and control of the Secret Service, a component of DHS, on an expedited basis.

58.  Defendant DHS wrongfully withheld agency records requested by plaintiffs by failing to act "as soon as practicable" to make a determination on the plaintiffs' expedited FOIA request, and by withholding from disclosure records responsive to their FOIA request.

59.  By failing to release the records as plaintiffs specifically requested, defendant DHS violated the FOIA.

60.  Plaintiffs therefore are entitled to injunctive and declaratory relief with respect to the expedited processing and disclosure of the requested records.

**CLAIM THREE**
**(EOP's Wrongful Treatment of Agency Records as Presidential Records Not Accessible Through the FOIA)**

61.  Plaintiffs repeat and re-allege paragraphs 1-60.

62.  Records the Secret Service creates and maintains of visits to agency components of the EOP are agency records under the FRA and subject to disclosure under the FOIA.

63.  By entering into an MOU that declares that the records of visits to agency components of the EOP are under the exclusive ownership, control, and custody of the President, Vice President, or originating EOP component, the EOP violated its mandatory, non-discretionary obligation under the FRA and the PRA to treat these records as agency records of DHS subject to the FOIA.

14

64.  Plaintiffs are therefore entitled to injunctive and declaratory relief with respect to the EOP's treatment of these records as agency records subject to the FOIA.

## CLAIM FOUR
### (DHS's Wrongful Treatment of Agency Records as Presidential Records Not Accessible Through the FOIA)

65.  Plaintiffs repeat and re-allege paragraphs 1-64.

66.  Records the Secret Service creates and maintains of visits to agency components of the EOP are agency records under the FRA and subject to disclosure under the FOIA.

67.  By entering into an MOU that declares that the records of visits to agency components of the EOP are under the exclusive ownership, control, and custody of the President, Vice President, or originating EOP component, DHS violated its mandatory, non-discretionary obligation under the FRA to treat and manage these records as agency records of DHS subject to the FOIA.

68.  Plaintiffs are therefore entitled to injunctive and declaratory relief with respect to DHS's treatment of these records as agency records subject to the FOIA.

## Requested Relief

WHEREFORE, plaintiffs respectfully request that this Court:

(1) Order defendant DHS to fully and promptly process Plaintiff Doyle's January 23, 2017 FOIA request and disclose all non-exempt documents immediately to plaintiff;

(2) Issue a declaration that Plaintiff Doyle is entitled to prompt processing and disclosure of the requested records;

(3) Order defendant DHS to fully and immediately process plaintiffs' March 10, 2017 FOIA request and disclose all non-exempt documents immediately to the plaintiffs;

(4) Issue a declaration that plaintiffs are entitled to expedited processing and disclosure of the requested records;

(5) Order defendant EOP to treat all records the Secret Service creates and maintains of visits to agency components of the EOP as agency records of DHS;

(6) Issue a declaration that all records the Secret Service creates and maintains of visits to agency components of the EOP are agency records of DHS and any MOU to the contrary is unlawful and unenforceable;

(7) Order DHS to treat and manage all records the Secret Service creates and maintains of visits to agency components of the EOP as agency records of DHS subject to the FOIA;

(8) Provide for expeditious proceedings in this action;

(9) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(10) Award plaintiffs their costs and reasonable attorneys' fees in this action; and

(11) Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

  _/s/ Anne L. Weismann_
Anne L. Weismann
(D.C. Bar No. 298190)
Citizens for Responsibility and Ethics
      in Washington
455 Massachusetts Ave., N.W.
Washington, D.C.  20001
Phone: (202) 408-5565
Facsimile: (202) 588-5020

Alex Abdo (AA-0527)
Jameel Jaffer (JJ-4653)
Knight First Amendment Institute at
      Columbia University

314 Low Library
535 West 116th Street
New York, NY 10027
Phone: (212) 854-9600
alex.abdo@knightcolumbia.org

Dated:  September 15, 2017,                    *Attorneys for Plaintiffs*