**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KATE DOYLE, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 17-2542 (KPF) |
| ) | |
| U.S. DEPARTMENT OF HOMELAND ) | |
| SECURITY, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**
**FOR AN ORDER REQUIRING THAT DEFENDANTS SHOW CAUSE**
**FOR FAILING TO COMPLY WITH THE COURT'S JULY 14 ORDER**

**Preliminary Statement**

Plaintiffs respectfully request that the Court issue an order requiring the defendants to show cause for their failure to comply with their court-ordered obligation to produce all responsive and non-exempt Mar-a-Lago records, and that the Court schedule an evidentiary hearing to determine what, if any, sanctions are appropriate.

This case involves Freedom of Information Act ("FOIA") requests for two distinct categories of documents: White House visitor logs and records of presidential visitors to Mar-a-Lago, President Donald Trump's "winter White House."  The parties have long agreed that the central unresolved legal and factual disputes in this case concern the first of these two categories – the White House visitor logs.  As to the second category, as detailed below, the government has repeatedly represented to the Court and to plaintiffs that the Secret Service was processing and would produce all non-exempt records for presidential visitors to Mar-a-Lago, a process it claimed would require months.  In reliance on those representations, plaintiffs agreed to an

extended briefing schedule for defendants'[1] forthcoming motion for summary judgment.  The Court enshrined the parties' agreement in its July 14 order, which stated that "[t]he Secret Service will complete its search for and processing of responsive 'records of presidential visitors at Mar-a-Lago,' and produce any non-exempt responsive records by September 8."  The original deadline of September 8 was extended by agreement to September 15.  *See* Dkt. 30.

At the appointed deadline, defendants reneged on the agreement.  Instead of seeking relief from the Court's July 14 order or even acknowledging that they were violating its terms by failing to produce all responsive and non-exempt Mar-a-Lago records, defendants simply produced a two-page document regarding the Japanese Prime Minister's visit to Mar-a-Lago and represented that "[t]he remaining records that the Secret Service has processed . . . contain, reflect or otherwise relate to the President's schedules" and that "Presidential schedule information is not subject to FOIA."  Notably, defendants did not explain why they produced those two pages but not records of other visits that reportedly occurred during the periods covered by plaintiffs' FOIA requests.

The Court, plaintiffs, and the citizens whose interest in transparency is ultimately served by the FOIA deserve an explanation for the government's sudden about-face.  This case raises issues that lie at the heart of our democracy and that depend for their vitality on the FOIA, a statute designed specifically to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  But the government's recent conduct raises much more elementary issues – namely, whether the government's word can be taken at face value and whether the government will continue to defy

---

[1] This case initially was filed against only the Department of Homeland Security, but plaintiffs added as a defendant the Executive Office of the President in their recently filed amended complaint (Dkt. 32).

2

the orders issued by the Court in this case.  Accordingly, plaintiffs respectfully submit that in addition to expediting the briefing schedule for the government's forthcoming summary judgment motion, the Court should require the government to explain why it has failed to comply with the July 14 order and schedule an evidentiary hearing to address this matter further and determine what, if any, sanctions should be imposed.

## FACTUAL BACKGROUND

This case arises from two FOIA requests.  The first request, sent on January 23, 2017 by plaintiff Kate Doyle, seeks from the Secret Service, a component of defendant Department of Homeland Security ("DHS"), all records from two systems used to track visitors at the White House complex – the Workers and Visitors Entry System ("WAVES") and the Access Control Records system ("ACR") – for January 20 through January 22, 2017.  Amended Complaint, ¶ 34. The second request, sent on March 10, 2017 by all the plaintiffs, seeks on an expedited basis all WAVES and ACR records from January 20 until March 8, 2017, and records of presidential visitors at Mar-a-Lago and Trump Tower for the same period.  *Id.*, ¶ 39.  When the Secret Service failed to respond to either request, plaintiffs filed this suit on April 10, 2017.  *See* Dkt. 1.

On April 17, 2017, the Court issued a Notice of Pretrial Conference (Dkt. 11) ordering the parties to appear for an initial pretrial conference on July 14, 2017, and to confer in the interim and submit to the Court a letter addressing seven topics.  Those topics included, *inter alia*, "[a] brief statement of the nature of the action, the principal defenses thereto, and the major legal and factual issues that are most important to resolving the case, whether by trial, settlement, or dispositive motion."  *Id.*

In the parties' response to this order, submitted on July 6, 2017 (Dkt. 22), defendant DHS stated as follows with respect to the requested Mar-a-Lago records:

the Secret Service is in the process of searching for and processing responsive records . . . Some or all of the responsive records may be exempt from disclosure, in whole or in part, pursuant to one or more of FOIA's exemptions.  *See* 5 U.S.C. § 552(b).

*Id.*  All parties described the issues as follows:

> *The parties agree the central legal and factual issue to be resolved is whether the WAVES and ACR records of visits to the White House are 'agency records' of the DHS subject to FOIA.  To the extent Plaintiffs challenge Defendant's response to their request of records for 'presidential visitors' at Mar-a-Lago, the court may also be asked to resolve issues regarding whether the Secret Service conducted a reasonable search for responsive records, and whether any responsive records are exempt from disclosure under one or more of FOIA's exemptions.*

*Id.*  (emphasis added).

This language clearly reflects the parties' understanding that the government is challenging only one of the two distinct systems of records at issue as outside the scope of the FOIA, namely the WAVES and ACR records.  This conclusion is reinforced by the complete absence from this filing of any reference to or description of the requested Mar-a-Lago records as anything but records to be processed under the FOIA.  Indeed, the Secret Service stated unequivocally that it would "complete its search for and processing of responsive 'records of presidential visitors at Mar-a-Lago,' and produce any non-exempt responsive records, by September 8, 2017."  *Id.*  This proposed deadline, nearly two months away, was negotiated by the parties based on the government's representation of what that processing would involve.

On July 14, 2017, the parties' counsel appeared before the Court for a pretrial conference.  Plaintiffs' counsel explained that defendant DHS had advised the plaintiffs "that records for Mar-a-Lago would be processed under the Freedom of Information Act" and further that the parties had agreed to exclude from those records "local law enforcement officers who wanted a

photo op with the president" and "certain family members who routinely would not have shown up in the automated system within the White House." Hearing Transcript (attached as Exhibit A), pp. 3-4. Government counsel offered no contradiction or correction to this explanation.

Indeed, government counsel confirmed efforts to

> work[] with the plaintiffs to try to narrow *the piece of this case that relates to records that are being processed under FOIA*, and to identify categories of records in which the plaintiffs are not interested so that the Secret Service can process the remaining records that are responsive as expeditiously as possible.

*Id.*, p. 10 (emphasis added). Government counsel expressed the hope that further discussions could "eliminate[e] disputes as to the scope and adequacy of the search as to exemptions." *Id.*, p. 11. All of these statements represented the government's position that the Mar-a-Lago records are agency records subject to the FOIA, and any potential issues with those records involved FOIA exemptions. Indeed, government counsel contrasted the requested WAVES and ACR records, explaining that for those records:

> We simply need to develop the record to explain to the Court why it is, in our view, and as the court in *Judicial Watch* found, that those are not agency records subject to FOIA.

*Id.*, p. 12.

Following the conference and based on the parties' representations, the Court issued an order establishing a briefing schedule that would commence on September 29, and be completed by January 12, 2018. *See* Dkt. 23. Specifically as to the requested Mar-a-Lago records, the Court ordered the Secret Service to "complete its search for and processing of responsive 'records of presidential visitors at Mar-a-Lago,' *and produce any non-exempt responsive records*, by September 8, 2017[.]" *Id.* (emphasis added).

The parties continued to discuss further narrowing of the requested Mar-a-Lago visitor records. On June 29, 2017, Brad Rosenberg, one of the government's counsel, wrote to plaintiffs' counsel to provide additional information on issues raised in the parties' initial pre-hearing discussion. Letter from Brad P. Rosenberg to Anne L. Weismann, Alex Abdo, Jameel Jaffer, July 26, 2017 (attached as Exhibit B). The letter states that the Secret Service had "conducted a search for records of 'presidential visitors' at Mar-a-Lago," interpreting that term to encompass "records of individuals potentially visiting with the President himself." *Id.* Mr. Rosenberg proposed that the Secret Service exclude records of visits by "cabinet members (such as the Attorney General), family members (such as the First Lady and Barron Trump), and White House staffers (such as Reince Priebus)." *Id.* According to the letter, "[i]ndividuals in these categories are themselves Secret Service protectees, have White House passes, or otherwise would not be considered to be disclosable visitors to the White House Complex[.]" *Id.* The letter also singled out one subcategory of Mar-a-Lago visitor records pertaining to the visit by the Japanese Prime Minister and his delegation, and requested that they also be treated as non-responsive. *Id.* Each of these categories was discussed as a carve-out from the body of records the Secret Service would otherwise produce.

By letter dated August 1, 2017, Plaintiffs' counsel responded to this proposal. Letter from Anne L. Weismann to Brad P. Rosenberg, August 1, 2017 (attached as Exhibit C). The letter identifies the one area where plaintiffs did not agree with the defendant's summary of the parties' previous discussion:

> That exception pertains to the Japanese Prime Minister's visit to Mar-a-Lago. According to my notes of our conversation, we agreed to limit our request to the Prime Minister, his wife, and those individuals from Japan who accompanied the Prime Minister on his trip.

*Id.*

The government responded to this letter on August 3, 2017.  Letter from Brad P. Rosenberg to Anne L. Weismann, Alex Abdo, Jameel Jaffer, August 3, 2017 (attached as Exhibit D).  The letter explained that the Secret Service had "a large volume of records (numbering in the hundreds) relating to this particular visit" and proposed that the Secret Service produce for the Japanese Prime Minister's visit only three documents that it would "treat as responsive to your request for information regarding the Prime Minister's visit."  *Id.*  According to the letter, those three documents consist of two containing "the President's travel schedules to Palm Beach, Florida for Friday, February 10 and Saturday, February 11," which government counsel represented would identify "who was scheduled to be traveling or meeting with the President on these dates."  *Id.*  The third document was described as "an email from the Department of State identifying the individuals associated with the Prime Minister's visit who will need access to Mar-a-Lago."  *Id.*

Plaintiffs responded to this proposal by letter dated August 8, 2017.  Plaintiffs' counsel stated plaintiffs' willingness "to accept this compromise provided the government does not assert any exemptions to disclosing this significantly narrower subset of documents that it could not assert equally with respect to the other responsive records we would be giving up."  Letter from Anne L. Weismann to Brad P. Rosenberg, August 8, 2017 (attached as Exhibit E).  The letter requested that the government "advise us whether you anticipate asserting exemptions unique to these three documents."  *Id.*  The government never responded to this request.

Late in the day on September 7, 2017, on the eve of the ordered production, government counsel contacted plaintiffs' counsel to request a one-week extension, to which plaintiffs consented on the condition that the disclosures be made by noon on September 15, 2017.  In its

letter motion to the Court (Dkt. 27), government counsel asserted additional time was needed for "consultation with and/or referral outside of DHS."  *Id.*  The Court granted the request, extending to September 15 at 12:00 p.m. the government's "deadline to produce agency records responsive to Plaintiff's FOIA request[.]"  *See* Dkt. 28.  In light of this extension, the parties jointly requested that the briefing schedule be changed, a request that would have briefing on summary judgment motions commence on October 23, 2017 and end on February 2, 2018.  *See* Dkt. 29. The Court granted this request on September 14, 2017.  *See* Dkt. 30.

At approximately 12:00 p.m. on September 15, plaintiffs received by email a letter from government counsel and a single document consisting of just over one page (both attached as Exhibit F).  The letter described the document as "regarding the Japanese Prime Minister's visit to Mar-a-Lago."  That document appears to be the State Department email referenced in Mr. Rosenberg's August 3, 2017 letter listing the individuals associated with the Prime Minister's visit who would need access to Mar-a-Lago.  Significantly, the government's production failed to include the two previously promised records pertaining to the Japanese Prime Minister's visit. *See* Exhibit D.

As to the "remaining records that the Secret Service has processed in response to the Mar-a-Lago request," the government asserted they "contain, reflect or otherwise relate to the President's schedules."  *See* Exhibit F.  Citing the D.C. Circuit's decision in *Judicial Watch v. U.S. Secret Service*, 726 F.3d 208, 224-32 (D.C. Cir. 2013), the letter goes on to state the government's belief "that Presidential schedule information is not subject to FOIA," an issue the government stated it was prepared to address "in our forthcoming dispositive motion."  *Id.*

From the public record alone, plaintiffs are aware of several instances in which visitors to Mar-a-Lago likely would have prompted the creation of records responsive to Plaintiffs' FOIA

requests.  For instance, on February 4, 2017, Wilbur Ross, who had yet to be sworn in as

Secretary of Commerce, as well as the ambassadors of Switzerland, Hungary, Afghanistan, Italy,

Denmark, Peru, Colombia, and Sweden were spotted at Mar-a-Lago.[2]  On February 10, 2017,

Robert Kraft dined with the President and members of the Japanese delegation at Mar-a-Lago.[3]

Of course plaintiffs' request is much broader than even these visits, as it seeks all presidential

visitors to Mar-a-Lago for a seven-week period, with the exception of the three narrow

subcategories plaintiffs agreed to exclude.

## ARGUMENT

I.     **THIS COURT SHOULD ISSUE AN ORDER FOR DEFENDANTS TO SHOW CAUSE FOR THEIR FAILURE TO COMPLY WITH THE COURT'S ORDER TO PRODUCE ALL NON-EXEMPT RECORDS OF PRESIDENTIAL VISITORS AT MAR-A-LAGO.**

The Freedom of Information Act authorizes district courts to enjoin agency withholding

"and to order the production of any agency records improperly withheld."  5 U.S.C. §

552(a)(4)(B).  Beyond this authority, courts have inherent and plenary power "to control the

disposition of the causes on [their] docket with economy and effort for [themselves], for counsel,

and for litigants."  *Landis v. North Am. Co.*, 299 U.S. 248, 254-255 (1936).  This includes the

"inherent power to enforce compliance with their lawful orders," *Shillitani v. United States*, 384

U.S. 364, 370 (1966), stemming not from "rule or statute, but by the control necessarily vested in

courts to manage their own affairs so as to achieve the orderly and expeditious disposition of

cases," *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45(1991) (quotation omitted).  Rule 16 of the

Federal Rules of Civil Procedure authorizes the court to "issue any just orders, including those

---

[2] http://www.politico.com/tipsheets/playbook/2017/02/super-bowl-edition-pence-on-lifting-russia-sanctions-well-see-feinstein-trump-ban-will-go-to-scotus-the-juice-new-members-at-mar-a-lago-pinkos-to-vps-office-218574
[3] https://twitter.com/Scavino45/status/830239486831448064; https://www.instagram.com/p/BQW5PvhjUVV/.

authorized by Rule 37(b)(2)(A)(ii)-(vii)" if a party "fails to obey a scheduling or other pretrial order."  Fed. R. Civ. P. 16(f).

This Court should exercise that authority to require the government to show why it has failed to comply with the Court's July 14 order compelling the government to produce all non-exempt records of presidential visitors to Mar-a-Lago.  The Court's order of July 14, as extended by its order of September 8, 2017, could not be clearer or more unambiguous:  defendant DHS was to search for and produce to the plaintiffs all non-exempt records of presidential visitors to Mar-a-Lago.  By using the term "non-exempt" the Court clearly was referencing those records that did not fall within one of the FOIA's exemptions, a term used repeatedly by both parties in written and oral submissions to the Court.  *See, e.g.*, Dkt.  22 (Response to Pre-Trial Conference Order).  This order followed and was based on representations of both parties that this case concerned two distinct categories of records: (1) the requested WAVES and ACR records that the government claims are presidential records and not subject to the FOIA, and (2) records of presidential visitors to Mar-a-Lago that the Secret Service claimed to be processing under the FOIA and represented it would produce, subject to possible exemption claims.  *See, e.g.*, Exhibit A (government counsel's statement concerning working with the plaintiffs to try to narrow the piece of this case "relat[ing] to records that are being processed under FOIA").  The order addressed both categories separately; Mar-a-Lago records were to be produced by September 8, 2017, while the parties were to brief the status under the FOIA of the WAVES and ACR records in a briefing schedule ordered to commence several weeks later.

To be sure, plaintiffs did not anticipate receiving *all* Mar-a-Lago presidential visitor records.  As documented in a series of letters the parties exchanged, plaintiffs agreed to narrow the body of records the Secret Service would have to process under the FOIA to ease the

agency's processing burden.  The agreed-to carve-outs included local law enforcement officers requesting photo ops with the President and visits by certain family members and high-level White House and cabinet-level officials who were not recorded in the WAVES and ACR records.  *See* Exhibit A, pp. 3-4.  The parties attempted to narrow the category of records to be produced for the Japanese Prime Minister's visit, but ultimately did not achieve a final meeting of the minds.  DHS proposed it produce three documents, while plaintiffs sought assurances, which were never given, that the government would not assert new exemptions for this smaller body of records.  *See* Exhibits C and D.  Without those assurances, the government lacked a reasonable basis to produce only a single document pertaining to the Japanese Prime Minister's visit.  At every turn, plaintiffs accommodated the government's requests to narrow the scope of the responsive Mar-a-Lago records, and agreed to a very generous briefing schedule that delayed final resolution of this case by many months so that the Secret Service could have adequate time to consult with the White House on potential exemption claims.

The government's September 15 production, which consisted of a single document pertaining to just one subcategory of requested records (the visit of the Japanese Prime Minister to Mar-a-Lago on February 10 through February 11, 2017), does not come close to complying with the Court's order.  Far from processing the Mar-a-Lago records as agency records under the FOIA as promised, the government has, with a small exception, reversed course entirely, claiming that the records are "presidential" and so not subject to the FOIA.  The government cited no exemptions to explain its grossly inadequate production, offering instead only its newly minted claim that aside from the proffered State Department email, the entirety of requested Mar-a-Lago records are not subject to the FOIA because they "contain, reflect, or otherwise relate to the President's schedules."  *See* Exhibit F.  Completely absent from the government's

letter was any explanation for its clear change of position; indeed, it failed to even acknowledge it was not producing what it had been promising to produce for months.[4]

Nor can the government's failure to comply with the Court's clear and unambiguous order be explained or excused by an unexpected change of events.  From the outset of this litigation, the government through its counsel advised plaintiffs it was treating the requested Mar-a-Lago records as properly subject to the FOIA, and would withhold only material that fell within one of the FOIA's exemptions.  Government counsel articulated this position to the Court in the pre-trial conference submission and at the pretrial conference itself.  Counsel again repeated this position in letters exchanged with plaintiffs' counsel over a period of weeks, and in requesting a one-week extension in the production schedule represented the government would be producing multiple emails compiled in PDF format.  In the more than two months between the initially submitted pretrial conference letter of July 6 (Dkt. 22) and the government's de minimis production on September 15, 2017, the government had multiple opportunities to alert the Court and the plaintiffs to its new position that not even Mar-a-Lago records were subject to the FOIA.  Yet it failed to do so again and again.

The record here points inescapably to one conclusion:  the government has failed to comply with the Court's clear and unambiguous order.  Accordingly, the Court should issue a show-cause order requiring the government to explain its apparent violation of the July 14 order.

---

[4] The government also failed to explain why it produced a record pertaining to the visit of the Japanese Prime Minister but not others, such as those already identified publicly as having visited the President at Mar-a-Lago. For example, the government's production does not include Wilbur Ross or Robert Kraft, who also met with the President during the periods covered in plaintiffs FOIA requests. https://twitter.com/Scavino45/status/830239486831448064; https://www.instagram.com/p/BQW5PvhjUVV/; https://www.instagram.com/p/BQW5PvhjUVV/; http://www.townandcountrymag.com/society/politics/news/a9923/doanld-trump-mar-a-lago/.  And even as to that category, the government failed to produce the promised additional two documents containing the President's travel schedules to Palm Beach, Florida for Friday, February 10 and Saturday, February 11, 2017.  *See* Exhibit D.

II.     **THE COURT SHOULD CONSIDER AWARDING SANCTIONS, INCLUDING SETTING AN ACCELERATED BRIEFING SCHEUDLE TO REDRESS DEFENDANTS' FAILURE TO COMPLY WITH THE COURT'S PRODUCTION ORDER AND GRANTING LIMITED DISCOVERY TO PLAINTIFFS.**

Beyond ordering the government to explain why it is not in violation of the Court's order to produce the Mar-a-Lago records, the Court should expedite briefing on defendants' forthcoming motion for summary judgment.  Plaintiffs agreed to extend those deadlines in reliance on the government's representations that it would produce the Mar-a-Lago records, a promise on which it reneged.  Plaintiffs should not be held to a schedule that was established to accommodate the government's claimed need for months to produce what turned out to be a single document.  Given the already lengthy delay in this case, the Court should order the defendants to file their summary judgment motion within one week of the Court's order, plaintiffs to file their opposition within 21 days thereafter, and defendants to file any reply within 10 days of the filing of plaintiffs' opposition.

Further, the Court should hold a hearing to consider exercising its inherent authority to issue sanctions for the government's noncompliance with its pretrial order.  Specifically, the Court should permit plaintiffs to take limited discovery or, alternatively, conduct an evidentiary hearing to ascertain the reason behind the government's reversal of position and failure to comply with, if not outright flouting of, the Court's order.

The needless and unreasonable delay the government's conduct has occasioned also justifies an award of attorney fees.  *See* Fed. R. Civ. P. 16(f) (authorizing the sanctions listed at Fed. R. Civ. P. 37(b)(2)(A)(ii)).  Plaintiffs have waited patiently for months for the government to process the Mar-a-Lago records as agency records under the FOIA, as it represented multiple times it was doing.  The end result of that wait – the government's claim that the Mar-a-Lago

13

records are not subject to the FOIA at all – was a bait and switch.  The government achieved a substantial delay in this case based on multiple representations to both the Court and the plaintiffs that it has now abandoned without any explanation whatsoever.  The government also has deprived the public of access to documents that would shed light on the influences to which the President is subject, information "needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. at 242. The Court should therefore also consider whether to award plaintiffs their attorney fees.

## <u>CONCLUSION</u>

The orderly administration of justice demands that all parties to this proceeding, including the DHS and the newly added Executive Office of the President, comply with this Court's orders.  Defendants' apparent failure to do so has deprived the public of valuable information, unreasonably delayed these proceedings, and required this motion to seek redress for this failure.  Accordingly, the Court should immediately order the defendants to show cause for their failure to comply with the Court's order to produce all the requested records of presidential visits to Mar-a-Lago, issue the requested briefing schedule, schedule a hearing to determine what sanctions, if any, are appropriate, and grant plaintiffs their attorney fees.

Respectfully submitted,

 */s/ Anne L. Weismann*
Anne L. Weismann
(D.C. Bar No. 298190)
Conor Shaw
Citizens for Responsibility and Ethics
 in Washington
455 Massachusetts Ave., N.W.
Washington, D.C.  20001
Phone: (202) 408-5565
aweismann@citizensforethics.org

Alex Abdo (AA-0527)

14

Jameel Jaffer (JJ-4653)
Knight First Amendment Institute at
Columbia University
314 Low Library
535 West 116th Street
New York, NY 10027
Phone: (212) 854-9600
alex.abdo@knightcolumbia.org

Dated:  September 20, 2017                    *Attorneys for Plaintiffs*