# EXHIBIT B



**U.S. Department of Justice**

**Civil Division, Federal Programs Branch**

| | |
|---|---|
| *Via U.S. Mail:* | *Via Special Delivery:* |
| P.O. Box 883 | 20 Massachusetts Ave., NW |
| Washington, DC  20044 | Washington, DC  20530 |

---

Brad P. Rosenberg          Telephone:     (202) 514-3374
Trial Attorney             E-Mail:        brad.rosenberg@usdoj.gov

July 26, 2017

*Via electronic mail*

Anne L. Weismann, Esq.
Citizens for Responsibility and Ethics in Washington
455 Massachusetts Ave., N.W., Sixth Floor
Washington, DC  20001

Alex Abdo, Esq.
Jameel Jaffer, Esq.
Knight First Amendment Institute at Columbia University
314 Low Library
535 West 116th Street
New York, NY  10027

> Re:     *Doyle, et al. v. U.S. Department of Homeland Security,*
>         No. 17 Civ. 2542 (KPF)

Dear Anne, Alex, and Jameel:

I am writing to follow-up on our June 29, 2017 conversation regarding the above-referenced case.  During our conversation, we discussed various categories of records relating to Trump Tower, Mar-a-Lago, and the Vice President's residence.  We are providing additional information regarding each of these categories with the understanding that doing so may allow the parties to reach agreement on the scope of plaintiffs' FOIA requests, thus avoiding unnecessary litigation.

**Records of Presidential Visits at Trump Tower.**  As indicated in the parties' July 6, 2017 letter to the Court, President Trump did not visit Trump Tower during the relevant time period.  Accordingly, there are no records responsive to plaintiffs' FOIA request relating to Trump Tower.

**Records of Presidential Visits at Mar-a-Lago.** As we discussed during our conversation, the Secret Service does not maintain any "visitor logs" at Mar-a-Lago.  The Secret Service has nonetheless conducted a search for records of "presidential visitors" at Mar-a-Lago.  In so doing, the government interpreted records of "presidential visitors" to be records of

1

individuals potentially visiting with the President himself.[1]  We believe that interpretation is consistent with the common-sense understanding of that phrase.  Indeed, in conducting its search for potentially responsive records, the Secret Service had applied that common-sense understanding to the scope of plaintiffs' FOIA request.  Applying a broader definition now to include "staff" within the scope of "presidential visitors" would require the Secret Service to conduct new, overlapping searches and to re-review records previously identified.  Moreover, Plaintiffs' FOIA request did not identify any particular staff members about whom records were sought, and broadening the scope of the request now to include unidentified Presidential staff would require the Secret Service to research and investigate both who was a member of the President's staff and whether any of those staff were present at Mar-a-Lago during same times as the President himself.  We do not believe that FOIA imposes this type of research requirement on agencies.  *See, e.g.*, *Assassination Archives & Research Ctr. v. CIA* ("*AARC*"), 720 F. Supp. 217, 219 (D.D.C. 1989).  We hope that you agree.

We also discussed excluding records of "presidential visitors" at Mar-a-Lago if those records reflect individuals meeting with the President under circumstances that would not normally result in the creation of a WAVES record of the type that was disclosed pursuant to the prior Administration's voluntary disclosure policy.  Specifically, we would propose to treat Mar-a-Lago records regarding the following categories of individuals as non-responsive:  cabinet members (such as the Attorney General), family members (such as the First Lady and Barron Trump), and White House staffers (such as Reince Priebus).  Individuals in these categories are themselves Secret Service protectees, have White House passes, or otherwise would not be considered to be disclosable visitors to the White House Complex (because they work there, are senior government officials, live there, or are family).  Accordingly, please confirm whether these categories of records relating to Mar-a-Lago can be considered to be non-responsive.  Similarly, we understand, based on your email dated July 5, 2017, that you agree that records of visits by local law enforcement officials to have their picture taken with the President can be considered to be non-responsive.

As noted during our telephone call, the Secret Service has identified a substantial number of records relating to the Japanese Prime Minister's visit to Mar-a-Lago.  You indicated a willingness to exclude the processing of these records if we could identify the categories of individuals who were included in the Japanese delegation.  Based on our review of records, members of the Japanese delegation included various Japanese senior government officials (including the Japanese Ambassador and a Deputy Chief Cabinet Secretary), senior and other staff (such as a chief of staff, van drivers, individuals carrying luggage, butlers, interpreters, photographers, assistants, and the like), family (such as the Prime Minister's and Ambassador's spouses), and other miscellaneous individuals (such as members of the press and press liaison officers).  Processing these records, in particular, would be burdensome for the Secret Service, and producing these records would not yield substantial information beyond that already reported in the press and reflected in this letter.  Accordingly, please let us know if you agree that the

---

[1] Most, if not all, of the records that the Secret Service has identified merely indicate the possibility of a "presidential visit" (*e.g.*, an email indicating that an individual will be meeting with the President).  These types of records do not reflect whether a visit actually took place.  The Secret Service has nonetheless interpreted plaintiffs' FOIA request so as to encompass these records of potential presidential visitors without conceding that such records are, in fact, responsive to plaintiffs' FOIA request.

2

Secret Service can treat these records as non-responsive, or if you have any additional questions regarding the Japanese delegation.

**WAVES and ACR Records at the Vice President's Residence.**  During our conversation, we indicated that the Vice President's Residence began using a WAVES system on March 6, 2017.  We have since ascertained that the WAVES system at the Vice President's residence is not yet fully operational (and was not fully operational during the March 6-8, 2017 time period subject to plaintiffs' FOIA request).  Therefore, there are no post-visit WAVES records automatically generated for the Vice President's Residence for the relevant time period (in other words, records generated by the system that reflect that an individual actually visited the Vice President's residence).  Accordingly, we would propose to treat these approximately three days of incomplete records as non-responsive (to the extent that the Vice President's residence is even within the scope of plaintiffs' FOIA request).  Please let us know if you disagree.

We hope this correspondence answers your outstanding questions.  We look forward to working with you as we continue to streamline the issues that the parties will need to present to the court.

Very truly yours,

/s/ Brad P. Rosenberg

Brad P. Rosenberg

cc:    Sarah Normand