UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATE DOYLE, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> U.S. DEPARTMENT OF HOMELAND SECURITY, ) <br> et al., ) <br> ) <br> Defendants. ) | Civ. Action No. 17-2542-KPF |

### DECLARATION OF JAMES M. MURRAY
### DEPUTY ASSISTANT DIRECTOR
### OFFICE OF PROTECTIVE OPERATIONS
### UNITED STATES SECRET SERVICE

I, James M. Murray, make the following declaration in lieu of affidavit pursuant to 28 U.S.C. §1746:

1. I am employed by the United States Secret Service ("Secret Service" or "Agency") as a Deputy Assistant Director ("DAD"), Office of Protective Operations ("OPO"). This is an SES position, ES-1811-00. I have been employed by the Secret Service since 1995 and assigned as the DAD of the OPO since April of 2016.

2. In this position, I oversee the Presidential Protective Division and protective operations on and around the White House Complex, including the Secret Service's involvement with the Worker and Visitor Entrance System (WAVES).

## Functions of the Secret Service

3. The Secret Service is a protective and law enforcement agency operating under the provisions of Title 18 of the United States Code, Sections 3056 and 3056A. Pursuant to Section 3056(a), the Secret Service is charged with the protection of the President and Vice President of the United States and their immediate families; major candidates for President and Vice President of the United States and their spouses; the President-elect and Vice President-elect and their immediate families; former Presidents and Vice Presidents of the United States, their spouses, and minor children; visiting foreign heads of state and heads of government; and certain other individuals as directed by the President of the United States. By statute, the Secret Service's protection of the President and Vice President (as well as the President-elect and Vice President-elect) is mandatory. Additionally, pursuant to Section 3056A(a), the Secret Service is authorized to protect the White House Complex and the Vice President's official residence; foreign diplomatic missions in the Washington, D.C. area, and certain other locations within the United States; designated events of national significance; as well as other locations. The Secret Service does not have a similar statutory authority to protect Mar-a-Lago or Trump Tower.

4. OPO is a directorate in the Secret Service that manages various operational and support functions. The OPO is responsible for establishing policies related to the Secret Service's protective mission and for overseeing the operational divisions that protect the persons, places, and events that the Secret Service is authorized to protect. In my capacity as the Deputy Assistant Director of the OPO, the representations made in this

declaration are made on behalf of the Secret Service as an agency and not solely on behalf of the OPO.

5. The "White House Complex" (also "Complex"), for purposes of access as secured by the Secret Service, includes the White House; the Eisenhower Executive Office Building ("EEOB"), which is also known as the "Old Executive Office Building"; the grounds encompassing the EEOB and the White House; and the New Executive Office Building ("NEOB"). Housed in the White House, the EEOB, and the NEOB are the offices of various staff of the Executive Office of the President ("EOP") and the Office of the Vice President.

6. As part of its function to provide protection for the White House Complex, the Secret Service monitors and controls access to the Complex.

## Records Regarding the White House Complex

### A. Record Types

7. The U.S. Secret Service utilizes two interrelated electronic systems, the Executive Facilities Access Control System ("EFACS") – EFACS system, for controlling and monitoring access to the White House Complex, and the WAVES system, for vetting visitor information and granting access to the White House Complex.

8. When an authorized White House Complex passholder (including, but not limited to, members of the President's and Vice President's staffs) provides visit information to the Secret Service, they typically utilize either a system called "Appointment Center" or the "WAVES Request System" ("WRS") to submit the request including all required personally identifiable information for the persons requesting access to the White House Complex. These systems are web-based applications allowing the users to securely

enter the sensitive information being requested. The Appointment Center website sends a link to the prospective visitor and the visitor fills out the required fields, which is then returned to the Appointment Center database. For most appointments, with the exception of East Wing tour groups, the information is automatically pulled from the Appointment Center into WAVES and held in draft until approved by an authorized passholder. With respect to the WRS, the EOP staffer who is requesting the appointment must fill out the required fields for prospective visitors. Once completed, the information is saved into WAVES directly. A Secret Service employee at the WAVES Center verifies that the requestor is authorized to make appointments for the specific location requested (for instance, an individual may only have authorization to make an appointment in the NEOB), fills in any additional necessary information[1] (or makes any changes, generally with the consent of the requestor), conducts background checks, and transmits the information electronically to the EFACS server. The Secret Service uses the information provided for the limited purposes of performing background checks to determine whether, and/or under what conditions, a visitor may be temporarily admitted to the Complex, and to verify the visitor's admissibility at the time of the visit.

9. WAVES records contain various fields, the majority of which contain information an authorized White House Complex passholder has provided to the Secret Service. Among those fields is a description field, which may contain comments provided by the authorized White House Complex passholder. For instance, a White House Complex passholder may enter information that the request relates to a large event such as a bill

---

[1] For instance, the WAVES Center employee may note that an escort for the visitor is needed.

4

signing. The note and description field may be annotated by Secret Service personnel with limited information as a result of background checks performed by the Secret Service and/or with instructions, including coded instructions, to Secret Service officers (such as security information, the name and/or initials of Secret Service personnel, or notes reflecting the circumstances pursuant to which an individual is to be admitted).

10. Once an individual is cleared into the White House Complex, he or she is generally issued an appropriate badge (although badges are often not issued for large groups, such as East Wing tours). Typically, an Access Control Record ("ACR") is generated within the EFACS system whenever a badge is swiped over one of the electronic badge readers located at entrances to and exits from the White House Complex. ACR records include information such as the entrant's name and badge number, the date and time of the swipe, and the post at which the swipe was recorded.

11. Once a visit takes place, WAVES records are typically updated electronically with ACR information showing the time and place of the entry into and exit from the White House Complex. (The time of arrival may differ slightly, however, between the WAVES and ACR records.) The after-visit records that combine WAVES and ACR information are still commonly referred to as WAVES records, though they may also occasionally be referred to as EFACS records.

12. The WAVES system was implemented at the Vice President's Residence ("VPR") on March 6, 2017. The EFACS system is still being configured for the VPR, and is not yet in production use at the VPR. Therefore, WAVES and ACR records are not generated at this time for the VPR.

## B. Presidential Control over White House Access Records and the Maintenance of those Records

13. Once a visit to the White House Complex is complete, the Secret Service has no continuing interest sufficient to justify its own preservation or retention of WAVES or ACR records. Since at least 2001, it has been the practice of the Secret Service to transfer newly-generated WAVES records to the White House Office of Records Management ("WHORM"), generally every 30 to 60 days. (The note and description fields from prior to 2006 were not initially transferred to the WHORM; those fields from 2004 to 2006 were subsequently transferred to the WHORM in 2006). However, since at least 2009, the records have been transferred approximately every 30 days. It is the intent of the Secret Service that, once transferred, the WAVES records are to be erased from the computer system. Additionally, WAVES records older than 60 days are ordinarily purged daily via a type of "auto-delete" on a rolling basis and overwritten on the servers. Data that is auto-deleted includes appointment information, visitor information (including personally identifiable information), times of arrival and departure, and through which entry/exit points the visitor passed.

14. In May 2006, the Secret Service Records Management Program entered into a Memorandum of Understanding ("2006 MOU") with the WHORM that documented what was then understood to be past practice and interests regarding WAVES and ACR records. The 2006 MOU also confirmed WHORM's management and custody of the records under the Presidential Records Act. A true and correct copy of the 2006 MOU is attached hereto as Exhibit 1.

15. At least as early as 2001 (at the end of the Clinton Administration), and upon revisiting the issue in 2004, the Secret Service and the White House recognized and agreed that

6

ACR records should be treated in a manner generally consistent with the treatment of WAVES records. The White House and the Secret Service have determined that ACR records should be transferred to the WHORM and deleted from the Secret Service's computers like WAVES records. In May 2006, the Secret Service transferred to the WHORM ACR records covering the period from 12:00 p.m. on January 20, 2001 to April 30, 2006. (The Secret Service has also transferred to the National Archives and Records Administration ACR records covering the period from 12:00 p.m. on January 20, 1993, to 12:00 p.m. on January 20, 2001.) Currently, the after-visit records that are transferred to the WHORM constitute a combination of WAVES and ACR information.

16. WAVES servers are located at the Secret Service's headquarters in Washington, D.C., and Secret Service personnel operate this machinery. However, the President is the business owner of the EFACS and WAVES systems, and the Secret Service operates those systems on behalf of the President, acting as a service provider. This organizational restructuring was undertaken pursuant to the 2015 Memorandum of Understanding ("2015 MOU") entered into by the Presidential Technology Community regarding Presidential Information Technology Community Operations. The Secret Service operates turnstiles, runs background checks on White House Complex visitors, and provides status updates as a service provider to the President.

17. The 2015 MOU specifically states that "[a]ll records created, stored, used, or transmitted by, on, or through the unclassified information systems and information resources provided to the President, Vice President, and EOP shall remain under the exclusive ownership, control, and custody of the President, Vice President, or originating EOP component."

18. The Secret Service manages the data regarding access prior to the visit to the White House Complex. However, once a visit is complete, the Secret Service has no continuing interest in WAVES and ACR records.

19. In fact, because the records do not belong to the Secret Service, pursuant to the 2015 MOU, the Secret Service must request permission from the White House to view a record once a visit has concluded. Once the records have been transferred to the WHORM, should the Secret Service need access to the files, in addition to obtaining White House approval, the Secret Service must contact the WHORM to obtain access to the records.

20. Additionally, the Secret Service must request permission from the DWHIT to modify in any way the WAVES or EFACS systems, as the President is the business owner of the systems and the Secret Service operates them on behalf of the President.

## C. Records Relating to the Current Litigation

21. In light of other pending federal litigation, Public Citizen v. DHS, Civ. Action No. 17-1669, pending in the U.S. District Court for the District of Columbia, and with the permission of the White House, for litigation hold purposes, the Secret Service has shut off the auto-delete of WAVES records effective August 19, 2017. The Secret Service will maintain a copy of the WAVES and ACR records that are sent to the WHORM during the pendency of that litigation, as well as this case.

### Accessing the President's Schedule

22. The Secret Service relies on information regarding the President's schedule that is provided by the White House Office to fulfill its protective mission. Each evening, staff from the White House Office, including the Office of Presidential Scheduling and the

Office of Advance, sends the President's schedule to the Secret Service. White House Office staff transmit the daily schedule in two ways. First, they upload the schedule to an EOP web portal, accessible only to a limited number of Secret Service personnel with an operational need to know the scheduling information. Second, the web portal generates an automated email that is sent to a limited number of Secret Service personnel with an operational need to know the scheduling information.

23. A Secret Service employee who needs access to the President's schedule through either the web portal or the email must first request access from the White House Office. Only after a Secret Service employee is approved by the White House Office will he or she receive access to the web portal or the auto-generated email.

24. The Secret Service uses the Presidential schedule documents and information obtained from the White House Office solely to fulfill its operational needs. Such Presidential schedule documents and information belong to the White House Office and not the Secret Service. They are provided to and used by the Secret Service solely for the limited purpose of allowing the Secret Service to perform its statutory duty to protect the President, Vice President and other protectees, as well as the White House Complex.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

10/23/17
Date

James M. Murray
Deputy Assistant Director
Office of Protective Operations
United States Secret Service