Memorandum of Understanding

*Entered into by the*

Presidential Information Technology Community

*Regarding*

Presidential Information Technology Community Operations

This Memorandum of Understanding (Memorandum) is effective as of the date of the last agreeing entity to sign the Memorandum.

*Recitals:*

1. On March 19, 2015, the President signed a Presidential Memorandum establishing the Director of White House Information Technology (DWHIT) and the Executive Committee for Presidential Information Technology (Committee), and designating several entities as members of the Presidential Information Technology Community (Community). The Presidential Memorandum requires Community entities to "enter into any memoranda of understanding as necessary to give effect" to the Presidential Memorandum.

2. This Memorandum is entered into by all Community entities as defined in the Presidential Memorandum, and collectively referred to as "Parties."

3. This Memorandum establishes a framework to enable the DWHIT and the Committee to implement the necessary policies and procedures for operating and maintaining the information resources and information systems provided to the President, Vice President, and Executive Office of the President (EOP).

4. Each Party enters into this Memorandum under that Party's authority to provide information resources and information systems to the President, Vice President, and EOP.

5. This Memorandum incorporates all principles and directives that are set forth in the Presidential Memorandum. This Memorandum shall in all instances be interpreted to give full force and effect to the President's and the DWHIT's respective authorities to set policies and procedures for the services that are provided as described and agreed upon below.

The Parties agree as follows:

**§ 1    Joint Program Office; Joint Operations Teams**

 1.01 The Parties establish a Joint Program Office to provide expert and administrative support for the performance of responsibilities under the Presidential Memorandum by the DWHIT, the Committee, the White House Technology Liaisons, and the Parties.

 1.02 The Joint Program Office consists of those employees and agents of each Party who are assigned by that Party to the Joint Program Office at the DWHIT's request. Unless the Parties agree otherwise, not more than 20 individuals may be assigned to the Joint Program Office at any time. Section 7 of this Memorandum notwithstanding, the Parties may agree to increase or decrease the maximum number of individuals who may be assigned to the Joint Program Office in any manner and by any medium reasonable in the circumstances. As used in this subsection, the term "employees" includes detailees.

 1.03 An individual who is assigned to the Joint Program Office works for the benefit of, and is performing the work of, the individual's employing authority.

 1.04 The Joint Program Office is under the DWHIT's operational supervision. Through the Joint Program Office, the DWHIT:
  (1)  coordinates mission and support programs in a manner that promotes the day-to-day operation and availability of the information resources and information systems provided to the President, Vice President, and EOP;

  (2)  prioritizes work, develops technology and policies, and aligns procurement and budgetary goals among the Parties;

  (3)  coordinates the implementation of requirements that are approved by the DWHIT; and

  (4)  provides the Deputy Chief of Staff for Operations and the Committee with the support necessary to review, evaluate, and approve plans and requirements.

 1.05 The DWHIT may, when appropriate and lawful, coordinate the efforts of the Joint Program Office with non-Community entities.

 1.06 As necessary to execute their responsibilities under law and the Presidential Memorandum, and to carry out activities in accordance with policy coordination and guidance by the DWHIT, the Parties agree to establish any necessary Joint Operations Teams. Section 7 of this Memorandum notwithstanding, the Parties may establish or disestablish Joint Operations Teams and specify the maximum number of individuals that may be assigned to a Joint Operations Team in any manner and by any medium reasonable in the circumstances. An individual who is assigned to a Joint Operations Team works for the benefit of, and is performing the work of, his or her employing authority.

    1.07    The Parties acknowledge that the DWHIT may promulgate all necessary procedures and rules governing the information resources and information systems provided by each Party to the President, Vice President, and EOP. Each Party agrees that, consistent with organization mission and the Presidential Memorandum, it will implement the procedures and rules as specified by the DWHIT, to the extent permitted by law.

### § 2 Lead Activity and Executive Agent Designations

    2.01    The White House Communications Agency (WHCA) shall provide, without limitation, the following services:
- (1) the acquisition, installation, operation, and accreditation of unclassified information technology infrastructure; and
- (2) core services related to the unclassified information technology infrastructure.

    2.02    WHCA shall serve as the Parties' executive agent to perform the duties and functions necessary to discharge WHCA's responsibility as lead agency under Section 2.01, including the authority to issue policies and procedures related to the discharge of its responsibilities.

    2.03    As used in Subsection 2.01:
- (1) "information technology infrastructure" includes the unclassified internal information technology plant infrastructure for all EOP and White House Military Office (WHMO) buildings, including copper and fiber backbones, LAN (routers and switches), WAN (SONET and transport circuits), and supporting power components. The term does not include the existing United States Secret Service (USSS) copper and fiber plant used in support of stand-alone security systems.
- (2) "core services" includes services necessary to access and use the information technology infrastructure, including virtualized computing and storage infrastructure, directory services, support services, messaging, telephony, video conferencing, and the end-user devices required to access the services including laptops and desktops, wireless and wired phones, printers and scanners, and networked multi-function copiers.

    2.04    The Office of Administration (OA) shall provide, without limitation, the following services:
- (1) the acquisition, development, deployment, and support of business productivity applications to serve the President, Vice President, and EOP and support the operations of the Parties under the Presidential Memorandum.

    (2)    records management services, including maintenance of records created, stored, used, or transmitted by, on, or through the information resources and information systems provided to the President, Vice President, and EOP subject to the terms and conditions in Section 3.

2.05    OA shall serve as the Parties' executive agent to perform the duties and functions necessary to discharge OA's responsibility as lead agency under Section 2.04, including the authority to issue policies and procedures related to the discharge of its responsibilities.

2.06    The National Security Council (NSC) shall provide, without limitation, the following services:
    (1)    all services related to the operation and maintenance of those systems commonly known as "T-Net," "S-Net," "CMS," and "EOP VoSIP" as of the effective date of this Memorandum, in order to ensure usage of and access to such systems by the Parties' authorized personnel.

    (2)    other services provided as of the effective date of this Memorandum that are related to communications with heads of state, heads of government, and other representatives of foreign governments.

2.07    NSC shall serve as the Parties' executive agent to perform the duties and functions necessary to discharge NSC's responsibility as lead agency under Section 2.06, including the authority to issue policies and procedures related to the discharge of its responsibilities.

2.08    USSS shall provide, without limitation, all services which are not otherwise agreed to be provided by any other Party, and which USSS employees and agents require in order to perform USSS's protective functions as required by law.

2.09    USSS shall serve as the Parties' executive agent to perform the duties and functions necessary to discharge USSS's responsibility as lead agency under Section 2.08, including the authority to issue policies and procedures related to the discharge of its responsibilities.

2.10    Each Party will continue to independently maintain or operate any information resources or information systems which that Party maintains or operates for internal purposes, or to fulfill independent responsibilities imposed by law. Such maintenance and operation will remain unaffected by this Memorandum unless otherwise agreed to by the Parties or directed by competent authority.

2.11    (1)    Each Party agrees to give reasonable notice to the other Parties and the DWHIT of any proposed acquisition by that Party of information resources or information systems. The notice must, at a minimum, include the nature and amount of expenditures for, and the acquisition method of, the information resources or information systems to be acquired.

 (2) Notice is considered reasonable if it is delivered to each Party's point of contact designated in Section 6 and the DWHIT not later than the 60th day before the date of the proposed acquisition.

 (3) This subsection does not apply to:
  (A) acquisitions related to those information resources or information systems subject to Section 2.10 and for which the total expenditure does not exceed the simplified acquisition threshold established by 41 USC 134 and adjusted by the Federal Acquisition Regulatory Council from time to time under 41 USC 1908; or

  (B) USSS's acquisition of information resources or information systems in furtherance of its criminal investigative duties as set out in 18 U.S.C. §§ 1029-1030 and 3056.

 (4) The Parties agree that a Party may exempt from the notice requirements of this section any acquisition that is related to a special access program that is operated by, or on behalf of, that Party. For any acquisition by WHCA, the WHMO Director may make the exemption.

## § 3 Unclassified EOP Records

3.01 All records created, stored, used, or transmitted by, on, or through the unclassified information systems and information resources provided to the President, Vice President, and EOP shall remain under the exclusive ownership, control, and custody of the President, Vice President, or originating EOP component. Such records are hereinafter referred to as "EOP records."

3.02 WHCA employees and agents shall not, and are not authorized to, access the content of EOP records except in accordance with paragraphs 1 and 2 of this subsection. The DWHIT shall establish a process such that EOP records shall be maintained in a way that prohibits WHCA employees and agents from acquiring physical or electronic access to the content of EOP records. WHCA employees and agents who are providing services under this Memorandum may have access to metadata that is associated with EOP records only as necessary to perform security or other technical activities in conjunction with the provision of services under this Memorandum.

 (1) Not more than 10 employees or agents of WHCA at any given time may have permission to access the content of EOP records for the sole purpose of performing security or other technical activities. Section 7 of this Memorandum notwithstanding, the Parties may agree to increase or decrease the maximum number of such individuals in any manner and by any medium reasonable in the circumstances.

 (2) Before any WHCA employee or agent may access the content of an EOP record pursuant to paragraph (1), approval must be provided by the DWHIT

    or the DWHIT's designee in accordance with operating procedures that will be agreed upon by WHCA and OA. Approval shall be given only in the event of exigent circumstances that make such access necessary.

 3.03 In accordance with policies and procedures issued by the DWHIT, the DWHIT shall ensure that audits are conducted to ensure compliance with subsection 3.02.

 3.04 WHCA must not take any steps to integrate EOP records into its own systems or files. WHCA shall maintain EOP records in a manner that separates them from WHCA's own agency records, as well as any other non-EOP records that utilize the same infrastructure or core services as WHCA records. WHCA shall not disseminate, modify, dispose of, or archive any EOP records. OA shall archive EOP records in conjunction with the originating EOP component. No EOP records shall be stored, controlled, sent, shared, or received other than in accordance with the policies and procedures of the OA.

 3.05 If WHCA receives a request, demand, or order for EOP records, or to which EOP records would be responsive, WHCA shall not provide EOP records in response and shall instead refer the matter to the EOP.

## § 4 Funds and Personnel

 4.01 Nothing in this Memorandum affects each Party's responsibility for the costs of its personnel, including pay, benefits, and support, nor its responsibility for supervision and management of its personnel.

 4.02 This Memorandum does not document or provide for the exchange of funds between the Parties. Similarly, it does not make any commitment of funds or resources.

 4.03 Any alterations to the arrangement described in subsection 4.01 will be accomplished by separate instrument(s).

## § 5 Other Provisions

 5.01 Nothing in this Memorandum restricts a Party's ability to enter into separate agreements with other Parties to fulfill the intent of the Presidential Memorandum or to fulfill responsibilities imposed on a Party by law. If a separate agreement may affect another Party's ability to discharge that Party's responsibilities imposed by this Memorandum or by law, the separately agreeing Parties will disclose the separate agreements as soon as practicable to the affected Parties.

 5.02 Unless otherwise prohibited by law, a Party may, in consultation with the DWHIT and subject to the recipient's White House Technology Liaison's acceptance, assign any agreement, right, or responsibility to another Party as necessary to permit each Party to perform its responsibilities under this Memorandum and without the need for an amendment to the Memorandum or for a separate

        memorandum. Each Party authorizes its White House Technology Liaison to make and accept assignments under this provision.

  5.03    Each Party acknowledges that it may need certain levels of expertise to discharge its responsibilities under the Presidential Memorandum or this Memorandum that may not be available to that Party through its own employees and agents and that a Party may need to obtain that expertise through separate agreements or interagency orders.

  5.04    Unless otherwise prohibited by law, each Party authorizes the DHWIT, after consultation with that Party's White House Technology Liaison, to act as that Party's non-exclusive agent for identifying and setting a requirement for the provision of services described in this Memorandum.

## § 6 Points of Contact

  6.01    The White House Technology Liaison for each Party serves as that Party's point of contact for communicating with the other Parties and the DWHIT to implement this Memorandum. The White House Technology Liaison for WHCA serves as the point of contact for WHMO.

## § 7 Complete Agreement; Amendment

  7.01    This Memorandum represents the complete agreement between the Parties regarding the Memorandum's subject matter.

  7.02    An amendment to this Memorandum is effective only if the amendment is in writing and signed by the Parties.

## § 8 Transferability

  8.01    This Memorandum is not transferable except with the written consent of the Parties.

## § 9 Termination; Expiration Date

  9.01    Subject to Subsection 9.02, a Party may terminate this Memorandum, for any reason or no reason, upon not less than 90 days' notice to all other Parties stating that Party's intention to terminate this Memorandum.

  9.02    Each Party acknowledges that it is entering into this Memorandum in good faith and is justifiably relying upon representations made by the other Parties. This reliance has caused and will cause each Party to reorder its operations and modify its decision-making processes, including the modification, forbearance, or discontinuance of hiring actions, budget requests, acquisition and related expenditure decisions, and service provision to non-Parties. Before a Party may give notice of termination, the Parties must meet and confer concerning the proposed termination of this Memorandum. A termination is not effective until the Parties agree that:

      (1)    the termination does not affect any prior obligation, project, or activity or any current or proposed action; and

      (2)    each Party is again capable of performing that Party's respective missions and responsibilities to at least the same extent of that Party's capability and performance as of the effective date of this Memorandum.

9.03    This Memorandum expires on the ninth anniversary of the effective date. The Parties will review this Memorandum on the third and sixth anniversaries of the effective date.

**For National Security Council:**

Suzanne A. George
Deputy Assistant to the President,
Executive Secretary, and Chief of Staff

Date: _____

**For Office of Administration:**

Catherine G. Solomon
Deputy Assistant to the President
and Director

Date: _____

**For United States Secret Service:**

George D. Mulligan
Chief Operating Officer

Date: _____

**For White House Military Office:**

James S. Bynum
Acting Director

Date: _____

**For White House Communications Agency:**

~~Donovan L. Routsis~~   Cleophus Thomas Jr.
Commander

Date: _____

*Memorandum of Understanding Entered into by*
*Presidential Information Technology Community Entities*                    Page **9** of **9**