UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
.............................................................................x
KATE DOYLE, NATIONAL SECURITY
ARCHIVE, CITIZENS FOR RESPONSIBILITY
AND ETHICS IN WASHINGTON, KNIGHT
FIRST AMENDMENT INSTITUTE AT
COLUMBIA UNIVERSITY,

                Plaintiffs,                17 Civ. 2542 (KPF)

      v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, EXECUTIVE OFFICE OF THE
PRESIDENT,

                Defendants.
.............................................................................x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' FOIA CLAIMS
AND DISMISSAL OF PLAINTIFFS' REMAINING CLAIMS**

CHAD A. READLER
Acting Assistant Attorney General

ELIZABETH J. SHAPIRO
Attorney

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

SARAH S. NORMAND
CASEY KYUNG-SE LEE
Assistant U.S. Attorneys

*Attorneys for Defendants*

# TABLE OF CONTENTS

I.     Summary Judgment Is Appropriate Based On the Government's
       Declarations .................................................................................................................1

II.    There Is No Genuine Dispute That the Secret Service Conducted a
       Reasonable Search ........................................................................................................1

III.   There Is No Genuine Dispute That the Requested WAVES and ACR Records and
       Presidential Schedule Documents Are Not "Agency Records"........................................5

       A.     Plaintiffs' Proposed Definition of "Agency Records" Is Erroneous ......................5

       B.     The Undisputed Record Shows That the Requested WAVES and ACR
              Records and Presidential Schedule Documents Are Not "Agency Records".........9

IV.    The Secret Service Need Not Process Operational Records Containing Isolated References
       to the Japanese Prime Minister's Visit That Are Entirely Duplicative of Information
       Previously Produced ....................................................................................................12

V.     Plaintiffs' Claims Regarding Visits to Agency Components of EOP...............................13

       A.     Plaintiffs Raise No Genuine Factual Dispute Regarding the Secret
              Service's Inability to Segregate Visits to Agency Components of EOP ..............13

       B.     Plaintiffs Fail to State a Claim Under the FRA, APA, or PRA............................15

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. CIA,*
    823 F.3d 655 (D.C. Cir. 2016) ................................................................................. 8

*Blakey v. DOJ,*
    549 F. Supp. 362 (D.D.C. 1982) ........................................................................ 14, 15

*Bloomberg, L.P. v. SEC,*
    357 F. Supp. 2d 156 (D.D.C. 2004) ....................................................................... 15

*Carney v. U.S. DOJ,*
    19 F.3d 807 (2d Cir. 1994) ................................................................................. 1, 4

*Consumer Fed. of Am. v. Dep't of Agriculture,*
    455 F.3d 283 (D.C. Cir. 2006) ................................................................................ 6

*Conti v. DHS,*
    No. 12 Civ. 5827 (AT), 2014 WL 1274517 (S.D.N.Y. Mar. 24, 2014) ..................... 3

*Ctr. for Auto Safety v. EPA,*
    731 F.2d 16 (D.C. Cir. 1984) ................................................................................ 14

*Davis v. DOJ,*
    460 F.3d 92 (D.C. Cir. 2006) ................................................................................ 15

*Gallant v. NLRB,*
    26 F.3d 168 (D.C. Cir. 1994) .................................................................................. 7

*Goland v. CIA,*
    607 F.2d 339 (D.C. Cir. 1978) ................................................................................ 8

*Grand Cent. P'ship, Inc. v. Cuomo,*
    166 F.3d 473 (2d Cir. 1999) ......................................................................... *passim*

*Holy Spirit Ass'n v. CIA,*
    636 F.2d 838 (D.C. Cir. 1980) ................................................................................ 8

*Immigrant Def. Project v. ICE,*
    208 F. Supp. 3d 520 (S.D.N.Y. 2016) ................................................................... 2, 4

*Judicial Watch v. U.S. Secret Serv.,*
    726 F.3d 208 (D.C. Cir. 2013) ...................................................................... *passim*

*Katz v. NARA*,
    68 F.3d 1438 (D.C. Cir. 1995) ............................................................................................ 9

*Kissinger v. Reporters Comm. for Freedom of the Press*,
    445 U.S. 136 (1980)................................................................................................... 6, 10

*Liberation Newspaper v. Dep't of State*,
    80 F. Supp. 3d 137 (D.D.C. 2015) ..................................................................................... 3

*Long v. OPM*,
    692 F.3d 185 (2d Cir. 2012) ............................................................................................... 1

*McPherson v. N.Y.C. Dep't of Educ.*,
    457 F.3d 211 (2d Cir. 2006) ............................................................................................. 14

*Mead Data Cent., Inc. v. U.S. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ......................................................................................... 14

*Moore v. Nat'l DNA Index Sys.*,
    662 F. Supp. 2d 136 (D.D.C. 2009) ................................................................................. 15

*N.Y. Times Co. v. U.S. DOJ*,
    756 F.3d 100 (2d Cir. 2014) ............................................................................................... 5

*N.Y. Times Co. v. U.S. DOJ*,
    872 F. Supp. 2d 309 (S.D.N.Y. 2012) ............................................................................... 1

*Nat'l Immigration Project v. U.S. DHS*,
    No. 11 Civ. 3235 (JSR), 2014 WL 6850977 (S.D.N.Y. Dec. 3, 2014) ............................ 1, 3, 4

*Paisley v. CIA*,
    712 F.2d 686 (D.C. Cir. 1983) ........................................................................................... 8

*Ryan v. DOJ*,
    617 F.2d 781 (D.C. Cir. 1980) ........................................................................................... 8

*U.S. DOJ v. Tax Analysts*,
    492 U.S. 136 (1989)................................................................................................... 5, 6, 7

*United We Stand Am., Inc. v. IRS*,
    359 F.3d 595 (D.C. Cir. 2004) ....................................................................................... 7, 8

*Vest v. Dep't of Air Force*,
    793 F. Supp. 2d 103 (D.D.C. 2011) ................................................................................... 3

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998) ............................................................................................. 18

**Statutes**

5 U.S.C. § 552(b) .............................................................................................................. 13, 14

**Rules**

Fed. R. Evid. 801 .................................................................................................................. 4

## I.  Summary Judgment Is Appropriate Based On the Government's Declarations

Plaintiffs urge the Court to deny summary judgment because the Secret Service did not submit a Local Rule 56.1 statement, ECF No. 52 ("Opp."), but it is well settled that "[i]n FOIA cases, the Court accepts agency affidavits in lieu of the Statement of Material Facts required by Local Civil Rule 56.1."  *Nat'l Immigration Project v. U.S. DHS*, No. 11 Civ. 3235 (JSR), 2014 WL 6850977, at *1 n.1 (S.D.N.Y. Dec. 3, 2014); *see also, e.g.*, *N.Y. Times Co. v. U.S. DOJ*, 872 F. Supp. 2d 309, 314 (S.D.N.Y. 2012); ECF No. 51 ("Gov't Br.") at 13 n.5.  That Plaintiffs "oppose summary judgment on a number of factual and legal objections that do not include challenges to any exemption claims," Opp. 3, provides no basis to deviate from this rule.  The Court can and should resolve those objections, as in any FOIA case, based on the Secret Service's declarations. *Carney v. U.S. DOJ*, 19 F.3d 807, 812 (2d Cir. 1994); *see Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478-81 (2d Cir. 1999) (evaluating "agency records" question based on declarations). Those declarations show that the agency conducted a reasonable search and produced all responsive, non-duplicative agency records, and Plaintiffs have not come forward with any evidence to create a genuine issue of material fact or demonstrate bad faith on the part of the agency.  *Grand Central P'ship*, 166 F.3d at 478.

## II.  There Is No Genuine Dispute That the Secret Service Conducted a Reasonable Search

The Campbell Declaration (ECF No. 46) establishes that the Secret Service's search was more than "adequate," *Long v. OPM*, 692 F.3d 185, 190 (2d Cir. 2012), which is all the Second Circuit requires.  That declaration must be accorded a presumption of good faith, and Plaintiffs offer no evidence to overcome it.  *See Immigrant Def. Project v. ICE*, 208 F. Supp. 3d 520, 527 (S.D.N.Y. 2016) ("Plaintiffs must aver specific evidence about a search's inadequacy.").[1]

---

[1] While Plaintiffs assert, in a footnote, that a presumption of good faith is not "warranted," Opp. 23 n.9, they make no "showing of bad faith on the part of the agency sufficient to impugn the agency's . . . declarations," *Carney*, 19 F.3d at 812.  Plaintiffs rely instead on arguments previously made in their motion for an order to show cause—which the Court has denied.  ECF No. 42.  The dates that Plaintiffs say are

Plaintiffs mischaracterize the Secret Service's declaration by claiming that the agency identified three "offices" that "could potentially have access to responsive documents," but only searched "specific components of those offices."  Opp. 24 (quoting Campbell Decl. ¶ 16).  In fact, the declaration makes clear that the relevant "offices" the Secret Service identified as potentially having access to responsive records—(1) the Protective Intelligence Division within the Office of Strategic Intelligence and Information (SII/PID), (2) the Miami Field Office (FO) and West Palm Beach Resident Office (RO) within the Office of Investigations, and (3) the Presidential Protective Division within the Office of Protective Operations (OPO/PPD)—all conducted searches for responsive records.  Campbell Decl. ¶¶ 16-19.[2]  Plaintiffs offer no evidence to suggest that any other office or division within SII or OPO, or any other field or regional office, could reasonably be expected to have records of Presidential visitors at Mar-a-Lago.

Plaintiffs' challenge to the search terms used to query emails in the Secret Service's E-vault, Opp. 25-26, is equally meritless.  "FOIA does not give requesters the right to Monday-morning-quarterback the agency's search."  *Immigrant Def. Project*, 208 F. Supp. 3d at 527; *Conti v. DHS*, No. 12 Civ. 5827 (AT), 2014 WL 1274517, at *15 (S.D.N.Y. Mar. 24, 2014).  The Secret Service applied a broad set of search terms to identify emails reflecting Presidential visitors at Mar-a-Lago, including not only "visitor," but also "guest," "appointment," "meet," "meeting," "clear," "cleared," "sweep," "swept," "checkpoint," "check point," "check," and "background."  Campbell

---

missing from the Campbell declaration have no bearing on the adequacy of the search, and certainly do not suggest any bad faith.  To the contrary, the fact that the Secret Service does not maintain visitor logs at Mar-a-Lago, but nonetheless conducted a broad search to determine whether it had any other records reflecting Presidential visitors, Campbell Decl. ¶¶ 9-20, only underscores the agency's good faith.

[2] The Secret Service did not "limit[] the scope of searches for both paper and electronic records" from these offices.  Opp. 25.  OPO/PPD, the Miami FO, and the West Palm Beach RO searched for any paper and electronic records reflecting that an individual met with the President at Mar-a-Lago during the relevant time period.  Campbell Decl. ¶¶ 18-19.  SII/PID, which conducts background checks pursuant to a sensitive security program, searched for records of any background checks for Presidential visitors to Mar-a-Lago for the same period.  *Id.* ¶¶ 16-17.

Decl. ¶ 20.  While Plaintiffs note that certain variations or alternative terms were not used, "an agency is not required to search for all possible variants of a particular name or term." *Conti*, 2014 WL 1274517, at *15; *Vest v. Dep't of Air Force*, 793 F. Supp. 2d 103, 119 (D.D.C. 2011).  As long as "the agency's search terms are reasonable," as they were here, "the Court will not second guess the agency regarding whether other search terms might have been superior." *Liberation Newspaper v. Dep't of State*, 80 F. Supp. 3d 137, 146-47 (D.D.C. 2015).

Notably, Plaintiffs offer no evidence that the additional terms they propose ("visit," "approval," "authorize," and "authorization") are reasonably likely to yield responsive records not already captured by the search.  In fact, the undisputed record shows otherwise.  The word searches of emails in the E-Vault supplemented the separate searches conducted by SII/PID, OPO/PPD, and Miami and West Palm Beach offices, which were not limited by search terms.  Campbell Decl. ¶¶ 17-20; *see id.* ¶ 21 (many emails located through OPO/PPD's search also located through word search of E-Vault).  And the Secret Service's search as a whole confirmed that the agency maintained no system for tracking Presidential visitors at Mar-a-Lago; nor is there any grouping, listing, or set of records that would reflect such visitors.  *Id.* ¶ 11.  There is therefore no factual basis to conclude that responsive records exist that were not captured by the search.[3]

Relying exclusively on press reports, Plaintiffs claim that "publicly available information . . . calls into question the adequacy of the Secret Service's search" and its "representations that it does not maintain records of [Presidential] visitors at Mar-a-Lago." Opp. 26.  Those press reports, however, are hearsay and thus not "evidence," Fed. R. Evid. 801, let alone the "specific evidence"

---

[3] Plaintiffs conclusorily assert that "the government repeatedly made unreasonable assumptions about the scope of Plaintiffs' FOIA requests," Opp. 24, but the Secret Service excluded only the categories of records that Plaintiffs agreed to exclude, Campbell Decl. ¶¶ 24-25, and media reports, *id.* ¶ 23, which Plaintiffs do not challenge.  That the Secret Service did not search for responsive WAVES and ACR records, Opp. 24, was entirely reasonable, as the agency concluded those records are not subject to FOIA, Campbell Decl. ¶ 7.  To the extent Plaintiffs purport to test that legal principle, the Government committed to retrieving the responsive records from the White House in the event of a final adverse order.  ECF No. 49 ¶ 11.

necessary to overcome the Secret Service's declaration, *Immigrant Def. Project*, 208 F.3d at 527.

Plaintiffs first cite a report that seven Mar-a-Lago members and guests told *ProPublica* that "uniformed officers, who appear to be Secret Service, stand at the doors of the resort on weekends when the president is there, and hold lists of people approved for access." Opp. 26-27 & nn.12-13. The report itself acknowledges that guests could not be "certain the officers were Secret Service agents," but even if they were, that would not show that the Secret Service maintains records of *Presidential* visitors. Mar-a-Lago is a private club, and not all individuals who enter, even when the President is there, can reasonably be considered Presidential visitors. *ProPublica*'s bald assertion that "the Secret Service . . . regularly conducts criminal background checks on any guests or staff members who will spend more than a passing moment in physical proximity to the president," Opp. 27, also fails to raise a genuine issue of fact. Although the report refers obliquely to "former Secret Service agents and experts," it provides no source for this statement, making it impossible to evaluate or challenge, and thus entitled to no weight. An unsourced and, at best, hearsay assertion in a press report falls far short of the specific evidence necessary to overcome the Secret Service's sworn, presumptively good-faith representation. *See Carney*, 19 F.3d at 812; *Immigrant Def. Project*, 208 F. Supp. 3d at 527.

Plaintiffs' claim that "the Secret Service offers no explanation for the lack of records pertaining to other individuals known to have visited President Trump at Mar-a-Lago," such as individuals attending a wedding there, Opp. 27-28 & nn.12-16, simply disregards the record. The explanation is that the Secret Service simply does not maintain such records. Campbell Decl. ¶¶ 11-13. Indeed, this argument points up the fundamental flaw in Plaintiffs' search challenge. Plaintiffs' complaint about the search boils down to the fact that despite conducting an exhaustive search that consumed hundreds of work hours, the Secret Service ultimately identified only a handful of responsive, non-duplicative records, all but one of which were determined not to be agency records subject to

FOIA.  *Id.* ¶¶ 9-33; ECF No. 40 ¶ 35.  However, "[t]he adequacy of a search is not measured by its results, but rather by its method."  *See N.Y. Times Co. v. U.S. DOJ*, 756 F.3d 100, 124 (2d Cir. 2014).  The Campbell Declaration demonstrates the reasonableness of the search methods employed by the Secret Service.  Plaintiffs offer "nothing more than speculation" in response, and thus fail to raise any genuine issue of fact.  *Grand Cent. P'ship*, 166 F.3d at 490.

## III. There Is No Genuine Dispute That the Requested WAVES and ACR Records and Presidential Schedule Documents Are Not "Agency Records"

### A.  Plaintiffs' Proposed Definition of "Agency Records" Is Erroneous

Plaintiffs ask the Court to read the Supreme Court's decision in *U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136 (1989) ("*Tax Analysts*"), as establishing a hard-and-fast rule that any record created or obtained by an agency in the legitimate conduct of agency business is necessarily "controlled" by the agency, and thus an "agency record" subject to release under FOIA, even if a FOIA-exempt entity, like Congress or the President, has evinced a clear intent to control the record. Plaintiffs' novel definition misreads *Tax Analysts* and disregards decades of settled law.

*Tax Analysts* does not stand for the proposition that "possession is nine-tenths of the law of 'control.'"  Opp. 6.  The Supreme Court articulated two elements that must be satisfied for documents to qualify as agency records:  the agency must both (1) "create or obtain the requested materials," and (2) "be in control of the requested materials at the time the FOIA request is made." 492 U.S. at 144-45.  In other words, the agency must both possess *and* control the requested materials.  While many (or even most) records that are in an agency's possession may also be under its control, possession alone does not render a document under the control of an agency. *See, e.g.*, *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 157 (1980) (transcripts of telephone conversations made while Kissinger was advisor to the President, but transferred to State Department, not under agency control).

Plaintiffs also misunderstand the Supreme Court's discussion of intent in *Tax Analysts*.  The Court did not "specifically reject[] reliance" on the "intent of the document's creator to retain or relinquish control over the records," the primary factor in the D.C. Circuit's four-factor test.  Opp. 8-9.  Plaintiffs seize on the Supreme Court's statement that "[s]uch a *mens rea* requirement is nowhere to be found in the Act," 492 U.S. at 147, but the Court was referring to a different *mens rea*.  The agency had argued that the "agency records" subject to disclosure under FOIA should be limited to "documents prepared substantially to be relied upon in agency decisionmaking."  *Id*. The tax court decisions at issue in *Tax Analysts* were not agency records, the government argued, because "judges do not write their decisions primarily with an eye toward agency decisionmaking."  *Id.*  The Court rejected that argument, explaining that the agency records determination does not turn on the intent of the creator as to the purpose of the document.  But the Court nowhere suggested that courts should not consider the intent of the creator *to retain or relinquish control over the records*—a factor that is plainly relevant to the question of control. Judge Henderson's concurrence in *Consumer Federation of America v. Department of Agriculture*, 455 F.3d 283 (D.C. Cir. 2006), on which Plaintiffs rely, underscores this distinction.  Judge Henderson explained that *Tax Analysts* had rejected reliance "on the authors' purpose *in creating the documents*," *id.* at 294 (emphasis added), but she endorsed the continued vitality of the D.C. Circuit's four-factor test, including consideration of the intent of the document's creator to retain or relinquish control over the records, *id.* at 295.

Plaintiffs further misconstrue *Tax Analysts* as establishing a hard-and-fast definition of control even in circumstances the Supreme Court never considered.  While the Court stated that "the agency must be in control of the requested materials at the time the FOIA request is made," and "[b]y control we mean that the materials have come into the agency's possession in the legitimate conduct of its official duties," it used that language to distinguish between "personal materials in

an employee's possession, even though the materials may be physically located at the agency," and materials that belong to the agency itself. 492 U.S. at 145. In such cases, the agency's "use of the document becomes more important in determining the status of the document under FOIA." *Gallant v. NLRB*, 26 F.3d 168, 172 (D.C. Cir. 1994), *quoted in Grand Cent. P'Ship*, 166 F.3d at 479-80. But the Supreme Court had no occasion in *Tax Analysts*, or since, to consider whether a document is an agency record when an entity exempt from FOIA—like Congress or the President—asserts control of the record. In that context, "[d]irect application of . . . *Tax Analysts* [i]s 'not so simple.'" *Judicial Watch v. U.S. Secret Serv.*, 726 F.3d 208, 222 & n.15 (D.C. Cir. 2013) (quoting *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004)).

The D.C. Circuit has considered this question in a long line of cases both before and after *Tax Analysts.* That Court has identified two factors as "effectively dispositive" of the status of documents created by or for Congress or the President: the intent of document's creator to retain or relinquish control over the record, and any restrictions on the agency's ability to use or dispose of the record. *Id.* at 221.[4] And the Court has emphasized that intent is a key factor, for if the President "has manifested [his] own intent to retain control, then the agency—by definition—

---

[4] *See Judicial Watch*, 726 F.3d at 223 (WAVES and ACR records reflecting visits to the Office of the President were not agency records because the White House had manifested a clear intent to control the documents, and the Secret Service was not free to use and dispose of records as it saw fit); *ACLU v. CIA*, 823 F.3d 655, 667 (D.C. Cir. 2016) (copy of Senate committee report sent to agency not an agency record because "the Senate Committee's intent to retain control" of the report was "clear"), *cert. denied*, 137 S. Ct. 1837 (2017); *United We Stand*, 359 F.3d at 600 (same for portions of documents IRS created in response to request for information from Congressional committee); *Goland v. CIA*, 607 F.2d 339, 347-48 (D.C. Cir. 1978) (same for CIA copy of congressional hearing transcript); *Paisley v. CIA*, 712 F.2d 686, 696 (D.C. Cir. 1983) (documents created by CIA in response to Congressional requests for information were agency records because there were insufficient indicia of Congressional intent to control the documents), *vacated in part on other grounds*, 724 F.2d 201 (D.C. Cir. 1984); *Holy Spirit Ass'n v. CIA*, 636 F.2d 838, 840 (D.C. Cir. 1980) (same for CIA documents generated in response to Congressional inquiries); *Ryan v. DOJ*, 617 F.2d 781, 787 (D.C. Cir. 1980) (questionnaire responses that Attorney General sent to Senators were agency records because no evidence that Congress or the President asserted control over the documents).

cannot lawfully 'control' the documents." *Id.* at 222 (discussing cases involving Congress; quotation marks omitted); *id.* at 222-23 (applying same rule to President).

Plaintiffs' argument that the D.C. Circuit's definition of "control" is "inconsistent with FOIA's text and purposes," Opp. 13, simply begs the question. FOIA does not define the term "agency records," and thus courts must determine which records Congress intended to subject to disclosure. *Judicial Watch*, 726 F.3d at 229. While "FOIA is a disclosure statute," Congress made clear that it does not apply to Congressional or Presidential records. The D.C. Circuit's test represents a carefully calibrated effort to exclude from FOIA only those records that (1) were created by or for Congress or the President, and (2) Congress or the President has clearly manifested an intent to control, and the agency agrees to this limitation on its ability to use and dispose of the records. *Id.* at 222-23. Indeed, as that Court recognized, subjecting such records to FOIA would raise serious separation-of-powers concerns. *See id.* at 224-31. Those concerns are not addressed by mischaracterizing the records as "only information *about* the President." Opp. 12. The D.C. Circuit's test applies only to records the President has manifested a clear intent to control. *See United We Stand*, 359 F.3d at 601.[5]

At least one court in this District has relied upon D.C. Circuit law in this area. In a case decided ten years after *Tax Analysts*, the court in *McErlean v. U.S. Department of Justice*, No. 97 WL 791680 (BSJ) (S.D.N.Y. Sept. 30, 1999), considered the status of documents provided by a confidential source to INS trial attorneys handling a deportation case. The court did not simply

---

[5] That key factor distinguishes WAVES and ACR records and Presidential schedules from the types of Presidential directives and other communications cited by Plaintiffs that are generally considered agency records. Opp. 12-13 & n.5, 29 (citing Presidential Policy Directives, legal and ethics advice, Presidential orders to DOD, and pardon documents). While the agency's dissemination of those Presidential directives and communications may be limited because they are classified or privileged, the President does not claim to control those documents when they are circulated within federal agencies. Likewise, the President does not assert control over the schedules of the Attorney General or other agency heads, even if they reflect White House meetings. Opp. 29-30 & n.17.

ask whether the documents were acquired in the course of agency business—as Plaintiffs would have this Court do—but rather recognized "documents provided from outside sources whose dissemination is controlled by the outside source" may not be "under sufficient agency control to render them 'agency records.'"  *Id.* (citing *Katz v. NARA*, 68 F.3d 1438, 1440-42 (D.C. Cir. 1995)). Applying the D.C. Circuit's test, the court concluded that the documents were not agency records because (1) the confidential source retained control over their dissemination, (2) the agency was not free to dispose of the documents as it saw fit, but was required (under the terms of its agreement with the source) not to disseminate them generally within the agency or to the public, (3) use of the documents had been limited to the two INS trial attorneys handling the deportation case, and (4) the documents were not integrated into the agency's record system or files, but were kept in the work file maintained by the two attorneys.  *Id.* at *11.[6]

For all these reasons, the Court should reject Plaintiffs' invitation to disregard decades of settled law in the D.C. Circuit in favor of Plaintiffs' erroneous interpretation of *Tax Analysts*.

## B.  The Undisputed Record Shows That the Requested WAVES and ACR Records and Presidential Schedule Documents Are Not "Agency Records"

Applying the factors identified by the D.C. Circuit to the undisputed facts in this case, there is no genuine dispute that the requested WAVES and ACR records and Presidential Schedule Documents are not "agency records."  The President has manifested a clear intent to control WAVES and ACR records, as the D.C. Circuit found in *Judicial Watch*, 726 F.3d at 223.  That clear intent is reflected in the 2006 Memorandum of Understanding ("MOU"), which reflects the longstanding understanding and practice of and agreement between the White House and Secret

---

[6] The Second Circuit has also applied D.C. Circuit law in this area, albeit in a case that did not involve a competing claim of control by an outside source.  *See Grand Central P'ship*, 166 F.3d at 479 (noting with approval the D.C. Circuit's "focus on a variety of factors surrounding the creation, possession, control, and use of the document by the agency" in determining whether a document is an agency record subject to FOIA; quotation marks omitted).

Service with regard to WAVES and ACR records and unequivocally asserts White House control over those records.  Gov't Br. 14-15; *see Judicial Watch*, 726 F.3d at 222-23, 231 (accepting and relying upon 2006 MOU's representations "as to the way in which both parties have historically regarded and treated the documents").  The record also shows that the White House has evinced a clear intent to control the Presidential Schedule Documents.  Gov't Br. 22.  The Secret Service's use and disposition of both categories of records are strictly limited, and the agency cannot use or dispose of them "as it sees fit."  *Id.* at 15-17.[7]

Plaintiffs nowhere dispute that the White House has manifested a clear intent to control these records.  Instead, they make a straw-man argument that "voluntary agreements between components of the executive branch can[not] trump an act of Congress."  Opp. 15.  The 2006 and 2015 MOUs do no such thing, as Plaintiffs themselves acknowledge.  *See id.*  And FOIA does not prohibit the President from asserting control over Presidential visitor records.  To the contrary, Congress excluded the Office of the President from the scope of FOIA, *Kissinger*, 445 U.S. at 156; *Judicial Watch*, 726 F.3d at 224-25, and compelled disclosure of such records "could substantially affect the President's ability to meet confidentially with foreign leaders, agency officials, or members of the public," and thereby "render FOIA a potentially serious congressional intrusion into the conduct of the President's daily operations."  *Judicial Watch*, 726 F.3d at 226.  That the Obama Administration *voluntarily* disclosed a subset of WAVES and ACR records does not ameliorate the separation-of-powers concerns that would be presented by *compelled* disclosure, Gov't Br. 20, as Plaintiffs tacitly admit by relegating this argument to a footnote, Opp. 11 n.4.  Nor are those concerns addressed by FOIA's exemptions, Opp. 10-11, as the D.C. Circuit recognized

---

[7] Although the D.C. Circuit found these two factors "effectively dispositive" with regard to records that Congress or the President has manifested an intent to control, *Judicial Watch,* 726 F.3d at 221, the fourth factor also favors White House control of WAVES and ACR records, which are not "integrated into the Secret Service's overall record system," *id.* at 220, particularly in light of the establishment of the Presidential Information Technology Community in 2015, Gov't Br. 16-17.

in *Judicial Watch*.  *See* 726 F.3d at 229 (exemptions unlikely to apply to most WAVES and ACR records, and requiring assertion of exemptions would impose substantial processing burden).

The mere fact that the Secret Service has responsibilities under the 2015 MOU, Opp. 15-16, does not suggest it controls WAVES and ACR records.  To the contrary, the undisputed record demonstrates that under the framework of the 2015 Presidential Memorandum and MOU, the President is the business owner of the EFACS and WAVES systems; and the Secret Service operates those systems on behalf of the President.  Gov't Br. 17 (Secret Service operates systems as a service provider, cannot make changes without consent, and must obtain White House approval to view WAVES and ACR records after a visit is concluded).  It is likewise immaterial that some of the information contained in WAVES and ACR records "comes from sources outside the White House."  Opp. 16.  As the D.C. Circuit recognized, "the creation of that information is generated in response to the White House's request for visitors' access; its disclosure would reveal information provided by the White House (*e.g.*, the identities of visitors); and the White House has asserted control over all [WAVES and ACR] records."  *Judicial Watch*, 726 F.3d at 222 n.18.  Certainly, "given the limitations imposed on the Secret Service's use of the documents, it is plain that the Service does not have *exclusive* control of the disputed documents."  *Id.* at 223 n.19 (quotation marks omitted).

Finally, Plaintiffs offer no response to the Court's fundamental concern in *Judicial Watch* that "Congress did not intend to authorize FOIA requesters to obtain indirectly from the Secret Service information that it had expressly barred requesters from obtaining directly from the President."  *Id.* at 231.  There is no question that Plaintiffs are seeking to do just that.  Both the responsive WAVES and ACR records and the Presidential Schedule Documents "effectively reproduce[] a set of records that Congress expressly excluded from FOIA's coverage" and "would not even arguably be subject to the Act, but for the President's need for [and statutory obligation to accept] Secret

11

Service protection." *Id.* at 232.  FOIA does not permit Plaintiffs "to obtain from the gatekeepers of the White House what they are unable to obtain from its occupants." *Id.* at 233.

## IV. The Secret Service Need Not Process Operational Records Containing Isolated References to the Japanese Prime Minister's Visit That Are Entirely Duplicative of Information Previously Produced

The Secret Service identified a handful of intelligence and other operational records relating to the Japanese Prime Minister's visit, which contain very brief and limited references to the fact that the Prime Minister and his wife would be meeting or dining with the President and First Lady on February 10-12, 2017.  Campbell Decl. ¶ 28(vii)-(xi).  Those isolated references are described in the Secret Service's declaration, and they consist of statements like: "the President and First Lady are traveling to Palm Beach, FL to host the Prime Minister of Japan" (from an intelligence situation report), "the Prime Minister will meet with the President at Mar-a-Lago" (from an intelligence assessment), and "the Prime Minister of Japan and Spouse will stay as guests of President Trump at the Mar-a-Lago Club" (from a letter to the FBI).  *Id.* ¶ 28(vii)-(ix).  These repetitive statements are the *only* information in the documents that is even arguably responsive to Plaintiffs' FOIA request, and they are entirely duplicative of information that the Government has made public, including in the State Department email produced to Plaintiffs.  *Id.* ¶ 32.  Because these documents are not records of Presidential visitors to Mar-a-Lago, but instead are records of Secret Service intelligence and operational activities that provide no further information about visitors to the President, the Secret Service deemed the documents non-responsive.  *Id.*

Plaintiffs fundamentally mischaracterize the Government's position on these records.  The Secret Service does not claim a FOIA "exemption" for "operational records" or "public information."  Opp. 30-32.  It simply seeks to read Plaintiffs' FOIA request in a rational manner that avoids needlessly expending agency resources processing intelligence reports and other operational records that are almost entirely non-responsive, but for a sentence here or there that

says nothing more than what the Plaintiffs already know—that the President met with the Japanese Prime Minister and his wife on February 10-12, 2017.  FOIA does not require the Secret Service to process additional records to provide that same information over and over.  Gov't Br. at 29.

## V.  Plaintiffs' Claims Regarding Visits to Agency Components of EOP

### A.  Plaintiffs Raise No Genuine Factual Dispute Regarding the Secret Service's Inability to Segregate Visits to Agency Components of EOP

Although *Judicial Watch* held that WAVES and ACR records reflecting visits to agency components of EOP are "agency records," 726 F.3d at 232-33, the undisputed record shows that due to limitations of the WAVES recordkeeping system, the Secret Service is unable to segregate visits to agency versus Presidential EOP components.  Gov't Br. 23-26.  None of the information fields contained in WAVES records identifies whether a record relates to a visit to an agency or Presidential component of EOP, and the information that is contained in those fields does not reliably show whether a record pertains to a visit to an EOP agency or Presidential component.  *Id.* at 23-24.  Plaintiffs fail to raise a disputed factual issue on this point.

Plaintiffs' reliance on FOIA's "requirement to release 'any reasonably segregable portion of a record,'" Opp. 19 (quoting 5 U.S.C. § 552(b)), is misplaced.  By its terms, that requirement (and the "inextricably intertwined" standard) pertains to disclosure of agency records after the redaction or deletion of material specifically "exempt under this subsection," 5 U.S.C. § 552(b)—*i.e.*, under one of FOIA's nine exemptions.  *See Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984) ("[T]he 'segregability' requirement applies to . . . *all exemptions in the FOIA*." (emphasis added)).  It does not apply to the distinct issue of distinguishing between agency and non-agency records.

Plaintiffs contend that the Secret Service can "ascertain which appointments are made by employees of the EOP agency components" from the appointment requestor's e-mail address.  Opp. 19-20.  But as the Secret Service has established, the requestor's identity does not necessarily

show that a WAVES record reflects an EOP agency component visit.  Gov't Br. 24.  That FOIA does not require "the responding agency to verify the accuracy of any requested information," Opp. 20, is beside the point.  The issue here is not whether the WAVES records contain accurate information about a visit, but whether they contain sufficient information to determine whether they are agency records subject to FOIA.  In the face of declarations showing otherwise, Plaintiffs raise no genuine issue of fact as to whether the appointment requestor's identity and place of employment suffice to identify a WAVES record reflecting an EOP agency component visit.

Plaintiffs' speculation that "it is difficult to believe that the Secret Service does not already possess information identifying those employees who work at the White House and their employing EOP component," Opp. 21, in addition to being "insufficient to defeat a motion for summary judgment," *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006), is immaterial.  FOIA simply does not require the Secret Service to embark on a research project by cross-referencing WAVES and ACR records with other records—which may well reside only at the White House or other EOP components—to determine whether they reflect visits to employees of agency components.  *See Blakey v. DOJ*, 549 F. Supp. 362, 366-67 (D.D.C. 1982) ("FOIA was not intended to compel agencies to become ad hoc investigators for requesters whose requests are not compatible with their own information retrieval systems."), *aff'd*, 720 F.2d 215 (D.C. Cir. 1983); *Moore v. Nat'l DNA Index Sys.*, 662 F. Supp. 2d 136, 138-39 (D.D.C. 2009) (FOIA requirements met where search for agency records impossible because of limitations of agency's recordkeeping system); *Bloomberg, L.P. v. SEC*, 357 F. Supp. 2d 156, 164 (D.D.C. 2004) (refusing to find that document was agency record where recordkeeping system did not distinguish between personal and agency business-related documents); Gov't Br. 24-25.[8]

---

[8] *Davis v. DOJ*, 460 F.3d 92, 98 (D.C. Cir. 2006), which involved an agency's obligation to "make a reasonable effort to ascertain life status" when invoking FOIA exemption 7(C), is inapposite.

14

### B. Plaintiffs Fail to State a Claim Under the FRA, APA, or PRA

The Government demonstrated in its opening brief—with citations to Plaintiffs' amended complaint—that Plaintiffs' putative FRA, APA, and PRA claims are in effect challenges to the Secret Service's determination that WAVES and ACR records reflecting visits to agency components of EOP are not segregable "agency records," and thus merely replicate the inquiry for their FOIA claims. *See* Gov't Br. 33, 35 (citing *Judicial Watch*, 726 F.3d at 214-15). And to the extent Plaintiffs' allegations do not duplicate that inquiry, they are impermissible challenges to agency and Presidential recordkeeping decisions not subject to judicial review under the FRA, APA, or PRA. *Id.* at 30-35. In response, Plaintiffs insist that the sole ground for their FRA and PRA claims is the failure to treat the responsive WAVES and ACR records as agency records. Opp. 34-35. But in doing so, Plaintiffs disregard the allegations in the amended complaint challenging the Secret Service's and White House's record disposal practices, and their request for injunctive relief requiring DHS to "manage and maintain these records as agency records." Am. Complt. ¶ 2 and page 15; Gov't Br. 31-33. Those allegations are plainly impermissible under the PRA and FRA, Gov't Br. 31-35, and Plaintiffs cannot sweep them under the rug by attempting to amend their operative complaint with their opposition brief. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998). Plaintiffs' position only reaffirms that their PRA and FRA challenges amount to a redundant FOIA-related inquiry.

### CONCLUSION

For the foregoing reasons, and the reasons stated in the Government's opening brief and declarations, the Court should grant summary judgment to defendant DHS on Plaintiffs' FOIA claims, dismiss Plaintiffs' claims under the FRA, APA, and PRA for failure to state a claim, and dismiss Plaintiffs' complaint.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York


By:   _/s/ Elizabeth J. Shapiro_____
ELIZABETH J. SHAPIRO
20 Massachusetts Ave., N.W.
Washington, DC 20530
Telephone: (202) 514-5302
Facsimile: (202) 616-8470
Elizabeth.Shapiro@usdoj.gov

By:   _/s/ Sarah S. Normand_____
SARAH S. NORMAND
CASEY KYUNG-SE LEE
86 Chambers Street
New York, NY  10007
Telephone:  (212) 637-2709
Facsimile:  (212) 637-2730
Sarah.Normand@usdoj.gov
Casey.Lee@usdoj.gov

16